**Matthew A. Levin, OSB # 003054**
MattLevin@MarkowitzHerbold.com
**April M. Stone, OSB # 200937**
AprilStone@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tel: (503) 295-3085
Fax: (503) 323-9105

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GREAT WEST CAPITAL, LLC,** a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**JACK PAYNE; JUNIPER MOUNTAIN CATTLE, LLC (RACHEL PAYNE, Manager),** a Nevada limited liability company; and **NEVADA LIVESTOCK MARKETING, LLC (RACHEL PAYNE, Manager),** a Nevada limited liability company,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. The above-named defendants Jack Payne ("Payne"), Juniper Mountain Cattle, LLC ("Juniper") and Nevada Livestock Marketing, LLC ("NLM") are primary obligors on promissory notes with a balance due of $4,029,326.19 ("the Debt") owed to plaintiff Great West Capital, LLC ("Great West").

2. The Debt arose from a business relationship wherein Payne agreed to purchase, manage, and sell a herd of cattle. Payne held himself out as an experienced cattleman who also owned NLM, a licensed and bonded Nevada auction house.

**Page - 1  COMPLAINT**

3. Payne, through his ownership of NLM, has the ability to sell cattle to the public under strict regulations to remit the funds to the selling party within 24 hours. Rachel Payne, the wife of Payne, as manager of the two defendant LLC's is also responsible for the accounting and office management of NLM.

4. Thereafter, under this agreement Payne purchased an aggregate total of 13,617 cows for a total purchase price and funds expended for operations in excess of $11,000,000 borrowed from Great West (the "Loan").

5. Subsequently, Payne informed Great West that there were no cattle left to sell.

6. The balance due under the notes exceeded $3,000,000.

7. According to Payne's records, there should have been approximately 3,000 head of cattle left, not including calves produced subsequent to purchase of the mother cows.

8. When Payne was confronted with the massive scheme to defraud, defalcate, and embezzle, he subsequently admitted that he had sold cattle and retained the funds. He also admitted that he had transferred cattle to programs belonging to other investors.

9. Additionally, Payne admitted to transferring calves to family members to raise and sell.

10. Payne made a $500,000 payment toward the balance due but has since refused or been unable to pay additional funds or provide an accounting to Great West.

11. It was Payne's responsibility to see that cattle were raised, managed, and sold, that profits were properly distributed, and that the Loan was paid. But, by Payne's own admission, the cattle under his care have been fraudulently conveyed, or otherwise misappropriated, and the Loan remains past due.

12. Due to defendants' fraudulent conveyance of property, misconduct, and failure to pay amounts when due, Payne, Juniper, and NLM defaulted on the Loan. As a result, Great West brings claims for defendants' breach of the commercial loan agreement and promissory note.

## PARTIES

13. Great West is a lender that is a Delaware limited liability company whose members are the Berg Capital Trust d/t/d May 26, 2005, the KJJ Trust d/t/d November 1, 1996, and the CA Trust d/t/d December 23, 2003. The trustee for each member of Great West is a Washington citizen.

14. Defendant Jack Payne is a cattle rancher who is a Nevada citizen.

15. Defendant Juniper Mountain Cattle, LLC, is a Nevada LLC that operates a cattle ranch, and its members are citizens of Nevada.

16. Defendant Nevada Livestock Marketing, LLC, is a Nevada LLC that operates a livestock auction house, and its members each are citizens of Nevada.

## VENUE AND JURISDICTION

17. Venue is proper in the Portland Division of the United States District Court for the District of Oregon because each defendant contractually agreed to venue in the Portland Division.

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Diversity of citizenship exists because Great West is a limited liability company with members who each are citizens of Washington; Payne is a citizen of Nevada; Juniper and NLM are Nevada limited liability companies whose members each are citizens of Nevada; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

19. The Commercial Loan Agreement and Promissory Note underlying the Loan each provide that each defendant consents to personal jurisdiction in the state of Oregon.

20. The Commercial Loan Agreement and Promissory Note each provide that each defendant consents to venue in the United States District Court for the District of Oregon, Portland Division.

21. This Court has personal jurisdiction over defendants because each defendant consented to personal jurisdiction in the District of Oregon.

## GOVERNING LAW

22. Nevada law governs the Commercial Loan Agreement and Promissory Note.

## FACTUAL ALLEGATIONS

23. Payne is a cattle rancher who operates a ranch and livestock auction business in Nevada. Payne and his wife Rachel Payne are the managing members of both Juniper and NLM.

24. Great West agreed to loan Payne, Juniper, NLM, and Eastgate Cattle money to fund a cattle operation. After a Series of loans, Payne, Juniper, and NLM executed a Commercial Loan Agreement and Promissory Note.

25. The Commercial Loan Agreement authorized Payne, Juniper, and NLM to take advances subject to a $6,000,000 principal limit for the purpose of running their cattle operation.

26. Defendants signed the Commercial Loan Agreement and a Promissory Note on July 17, 2018, and thereby agreed to repay all money advanced under the Commercial Loan Agreement. Under the Commercial Loan Agreement and Promissory Note, the balance of any advances and interest were due on demand or no later than November 30, 2018.

27. Prior to and through the term of the Commercial Loan Agreement, Great West advanced a total of approximately $11,000,000.00 to Payne, Juniper, and NLM.

28. Great West extended the maturity date of the Commercial Loan Agreement several times to facilitate repayment of the Loan.

29. In June or July 2020, Payne told Great West that defendants were no longer in possession of the cattle securing the Note. When confronted with this, Payne confessed to selling some cattle without remitting the proceeds and moving some cattle to other programs for the benefit of third-parties contrary to the terms of the Commercial Loan Agreement.

30. NLM is a cattle auction house, which provided Payne the opportunity and ability to sell cattle to third parties and retain the proceeds.

31. Payne, Juniper, and NLM have not paid Great West the proceeds from the sale of the missing cattle and stopped making repayment on the Loan.

32. As of January 25, 2022, the Loan balance due and outstanding was $4,029,326.19 (the "Balance"). Pursuant to section 5(B) of the Promissory Note, the balance continues to accrue interest at a rate of twenty percent (20%) per annum.

33. Section 9 of the Commercial Loan Agreement provides that default on any agreement between Great West and Payne, Juniper, and NLM associated with the Loan constitutes a default on the Commercial Loan Agreement.

34. Section 10 of the Commercial Loan Agreement provides Great West the right to accelerate the Loan, make a claim for insurance proceeds, terminate defendants' right to further advances, attach defendants' wages, and pursue other remedies.

35. Section 13 of the Promissory Note provides that Great West may, at its discretion, declare the entire balance of the Promissory Note due immediately on the creation of any lien, encumbrance, transfer, or sale of all or any part of the property securing the Promissory Note.

36. Great West exercised its rights to accelerate the Loan and declared the entire balance of the Promissory Note due immediately.

## FIRST CLAIM FOR RELIEF
## Breach of Contract—Commercial Loan Agreement

37. Great West re-alleges and incorporates all prior paragraphs.

38. The Commercial Loan Agreement is a valid and enforceable contract between Great West and defendants.

39. Great West fully performed its obligations under the Commercial Loan Agreement.

40. Great West advanced funds under the Commercial Loan Agreement to defendants that they failed to repay on demand or on the maturity date, November 30, 2018.

41. Defendants breached the Commercial Loan Agreement when they failed to pay the loan in full on demand or on the maturity date, November 30, 2018.

42. By failing to tell Great West that the cattle securing the Loan were gone, defendants breached section 9(G) the Commercial Loan Agreement by making verbal or written statements that were untrue, inaccurate, or concealed a material fact at the time they were made.

43. By failing to tell Great West that the cattle securing the Loan were gone, defendants breached sections 8(Q) and 9(G) of the Commercial Loan Agreement by failing to disclose to Great West information that materially and adversely affected defendants' ability to perform their obligations under the Commercial Loan Agreement.

44. Great West reserves the right to allege such other breaches discovery may reveal.

45. Defendants breached section 9(F) of the Commercial Loan Agreement by defaulting on the Promissory Note as alleged *infra*.

46. Defendants' breach of the Commercial Loan Agreement caused Great West to suffer damages in an amount to be determined at trial.

47. The Commercial Loan Agreement requires defendants to pay Great West's attorneys' fees, costs, and expenses incurred in connection with the enforcement of the Commercial Loan Agreement and Promissory Note.

48. Defendants are jointly and severally liable for Great West's damages under section 14 of the Commercial Loan Agreement and Nevada common law.

## SECOND CLAIM FOR RELIEF
## Breach of Contract—Promissory Note

49. Great West realleges and incorporates all prior paragraphs.

50. The Promissory Note is a valid and enforceable contract between Great West and defendants.

51. Great West fully performed its obligations under the Promissory Note.

52. Defendants breached sections 3 and 9 of the Promissory Note when they failed to pay the loan in full.

53. Defendants breached section 13 of the Promissory Note by failing to pay the Note on sale of the property securing the Note.

54. Defendants breached the Promissory Note by defaulting on the Commercial Loan Agreement as alleged supra.

55. Defendants' material breach of the Promissory Note caused Great West to suffer damages in an amount to be determined at trial.

56. The Promissory Note requires defendants to pay Great West's attorneys' fees, costs, and expenses incurred in connection with the enforcement of the Commercial Loan Agreement and Promissory Note.

57.     Defendants are jointly and severally liable for Great West's damages under section 18 of the Promissory Note and Nevada common law.

## PRAYER FOR RELIEF

Wherefore, Great West prays for the following relief:

A.     That judgment be entered against Payne, Juniper, and NLM, jointly and severally, in favor of Great West in the amount of all sums, including principal, interest, fees, and penalties accrued under the terms of the Commercial Loan Agreement and Promissory Note or such other amount as may be shown at trial;

B.     That judgment be entered against Payne, Juniper, and NLM, jointly and severally, in favor of Great West for interest at a rate of twenty percent under section 5(B) of the Promissory Note from the date of judgment until the judgment and interest are paid in full;

C.     That judgment be entered against Payne, Juniper, and NLM, jointly and severally, for the attorney's fees and costs incurred by Great West to enforce the terms of the Commercial Loan Agreement and Promissory Note or such other amount as may be shown at trial;

D.     That the Court award such additional relief as justice may require.

DATED this 25th day of May 2022.

MARKOWITZ HERBOLD PC

By:   *s/April M. Stone*
Matthew A. Levin, OSB # 003054
MattLevin@MarkowitzHerbold.com
April M. Stone, OSB # 200937
AprilStone@MarkowitzHerbold.com
Attorneys for Plaintiff Great West, LLC

1250543