IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREAT WEST CAPITAL, LLC, | Case No. 3:22-cv-00768-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PAYNE DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **JACK PAYNE**; **JUNIPER MOUNTAIN CATTLE, LLC**, a Nevada limited liability company; and **NEVADA LIVESTOCK MARKETING, LLC**, a Nevada limited liability company, | |
| Defendants, | |
| v. | |
| **EASTGATE CATTLE CO., LLC**, a Nevada limited liability company; **EASTGATE CATTLE COMPANY LLC**, a Delaware limited liability company; and **ARTHUR H. BERG**, an individual, | |
| Counterclaim Defendants. | |

Richard A. White, First Commerce, 155 B Avenue, Lake Oswego, OR 97034. Amy M. Bogran and Roy B. Thompson, Thompson & Bogran PC, 5 Centerpointe Drive, Suite 400A, Lake Oswego, OR 97035. J. Kurt Kraemer and Jonathan Mark Radmacher, McEwen Gisvold, LLP,

1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204. Attorneys for Plaintiff and Counterclaim Defendants.

Erick J. Haynie and Renée E. Rothauge, Perkins Coie, LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209. Tonya Van Walleghem, P.O. Box 1933, Lake Oswego, OR 97035. Attorneys for the Payne Defendants.

**IMMERGUT, District Judge.**

This matter is before this Court on a Motion to Dismiss brought by Jack Payne, Juniper Mountain Cattle, LLC ("Juniper"), and Nevada Livestock Marketing, LLC's ("NLM"), (collectively, "Payne Defendants") against Eastgate Cattle Company, LLC ("Eastgate") and Arthur Berg (collectively, Counterclaim Defendants"), ("Mot."), ECF 139.[1] This action involves a dispute about a partnership to buy, manage, and sell cattle (the "Partnership") between the Payne Defendants and Counterclaim Defendants. After their Partnership deteriorated, Counterclaim Defendants asserted several claims against the Payne Defendants: (1) Breach of Contract; (2) Conversion; (3) Fraud; (4) Civil Conspiracy to Commit Fraud; (5) Consumer Fraud; (6) Breach of Implied Covenant of Good Faith and Fair Dealing; (7) Unjust Enrichment; and (8) Negligent Misrepresentation, ("Counterclaims"), ECF 128 ¶¶ 95–145.

The Payne Defendants now move this Court to dismiss Counterclaim Defendants' claims for Negligent Misrepresentation and Consumer Fraud, Mot., ECF 139. As explained below, this Court grants in part and denies in part the Payne Defendants' Motion to Dismiss, ECF 139.

---

[1] This Court notes that this action involves two Eastgate entities: Eastgate Cattle Co., LLC ("Eastgate-NV") and Eastgate Cattle Company LLC ("Eastgate-DE"). However, only Eastgate-DE and Berg have asserted claims against the Payne Defendants because Counterclaim Defendants contend that Eastgate-NV was not involved in the events underlying this case. *See* Counterclaims, ECF 128 at 2. Accordingly, only Eastgate-DE is relevant to this Opinion and will be referred to as "Eastgate" throughout, consistent with the Counterclaims, ECF 128.

## LEGAL STANDARDS

A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To be entitled to a presumption of truth, a complaint's allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## BACKGROUND

Jack Payne is a cattle rancher based in Nevada. Counterclaims, ECF 128 ¶ 67.[2] Mr. Payne and his wife are the managing members of Juniper and NLM. *Id.* ¶¶ 68–69. The Payne Defendants operate a livestock auction house, cattle ranches, and livestock transportation companies. *Id.* ¶ 74.

Payne approached Arthur Berg to propose that the two enter a joint cattle ranching venture under which Berg would buy and own the cattle, and Payne and his entities would

---

[2] The facts in this Background section are taken from Counterclaim Defendants' Counterclaims, ECF 128, and are accepted as true when considering the Payne Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted).

manage the cattle. *Id.* ¶ 75. Berg created the entity Eastgate for the purpose of owning the cows and carrying out the cattle operation. *Id.* ¶ 77. The Payne Defendants and Eastgate entered into several loans to fund the purchase of cattle for the Partnership. *Id.* ¶ 82.

On or around November 1, 2016, the Payne Defendants and Eastgate executed Management Agreements to establish the Parties' cattle operation. *Id.* ¶ 77. According to the Management Agreements, the Payne Defendants would buy the Partnership's cattle on behalf of Eastgate. *Id.* ¶ 78. The Payne Defendants were required to pay expenses related to managing the cattle and account for these expenses each month. *Id.* ¶¶ 79–80. Then, the Payne Defendants would sell the cattle and pay all of the gross receipts to Eastgate. *Id.* ¶ 81. Plaintiff alleges that the Payne Defendants signed the Management Agreements despite never intending to comply with these obligations. *Id.* ¶¶ 79–80. Under the Management Agreements, gross receipts from the sale of cattle would be applied to the outstanding loan balance. *Id.* ¶ 84. After the loans were repaid, sales proceeds would then be used to pay Payne's fees for managing the cattle. *Id.* Any remaining profits would be shared equally by Payne and Eastgate. *Id.*

On July 17, 2018, the Parties consolidated their loans with the lender Great West Capital, LLC ("Great West"). *Id.* ¶ 83. The Parties also entered into a security agreement granting Great West a security interest in "[a]ny right to payment, or proceeds thereof, that Jack Payne; [NLM]; and/or [Juniper] has or hereafter acquires with respect to any agreement with [Eastgate]." *Id.* ¶ 85 (alterations in original).

Despite the obligations set forth in the Management Agreements, the Payne Defendants eventually stopped remitting cattle sales proceeds to Eastgate. *Id.* ¶ 87. After being confronted by the Counterclaim Defendants, Payne allegedly admitted that the Payne Defendants had transferred some cattle to family members and other investors. *Id.* ¶¶ 90–91.

On May 25, 2022, Plaintiff Great West sued Jack Payne, Rachel Payne, NLM, and Juniper alleging that the Payne Defendants defaulted on their loans and misappropriated cattle that secured Great West's loan to the Payne Defendants. Complaint, ECF 1. On April 12, 2023, Plaintiff filed its First Amended Complaint, ECF 68. Then, on November 27, 2023, the Payne Defendants answered the amended complaint and asserted several counterclaims against Eastgate and Berg. Payne Defendants' Counterclaims, ECF 117. On January 3, 2024, Counterclaim Defendants filed their own counterclaims asserting several Nevada state statutory and common-law claims. Counterclaims, ECF 128. The Payne Defendants then filed their Motion to Dismiss Counterclaim Defendants' Claims on February 6, 2024, ECF 139.

## DISCUSSION

The Payne Defendants move to dismiss Counterclaim Defendants' claims for Negligent Misrepresentation and Consumer Fraud for failing to state a claim under Rule 12(b)(6). *Id.* This Court grants in part and denies in part the Payne Defendants' Motion.

## A.  Negligent Misrepresentation

The Payne Defendants first move to dismiss Counterclaim Defendants' claim for Negligent Misrepresentation. Mot., ECF 139 at 3–7; Payne Defendants' Reply ("Reply"), ECF 153 at 2–5. Under Nevada law, to state a claim for negligent misrepresentation a party must plead: "1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the

information." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006); *see also Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 129 Nev. 394, 400 (2013).[3]

The Payne Defendants argue that Counterclaim Defendants' claim for Negligent Misrepresentation should be dismissed because such a claim may not be based on (1) promises to comply with the Management Agreements, nor (2) statements about the Payne Defendants' competence as cattlemen. Mot., ECF 139 at 5–7; Reply, ECF 153 at 2–5.[4, 5] As explained below, this Court grants the Payne Defendants' Motion as to their alleged promises to comply with the Management Agreements and denies the Payne Defendants' Motion as to the statements about their competence as cattlemen.

---

[3] The Parties do not dispute that Nevada law governs Counterclaim Defendants' Negligent Misrepresentation claim. *See* Reply, ECF 153 at 2–3; Resp., ECF 142 at 2–3.

[4] Separately, the Payne Defendants argue that the allegation—the Payne Defendants "made representations to [Counterclaim] Defendants regarding the administration and management of the cattle programs"—cannot establish Negligent Misrepresentation because it does not satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement and does not involve any allegation of the negligent provision of business advice. Mot., ECF 139 at 5–6 (citing Counterclaims, ECF 128 ¶ 139). In response, Counterclaim Defendants concede that negligent misrepresentation claims must be pleaded with particularity, but do not otherwise address these arguments. *See* Resp., ECF 142 at 6–7. Accordingly, this Court finds that Counterclaim Defendants fail to plead a Negligent Misrepresentation claim based on this alleged statement with particularity. This Court dismisses any potential Negligent Misrepresentation claim based on this allegation. Because Counterclaim Defendants allege other misrepresentations, this footnote does not fully resolve the Payne Defendants' Motion to Dismiss the Negligent Misrepresentation claim.

[5] In their Motion, the Payne Defendants also argue that the Negligent Misrepresentation claim should be dismissed because Counterclaim Defendants fail to allege a special relationship and the claim is barred by the economic loss doctrine. Mot., ECF 139 at 3–4. Because the Payne Defendants withdrew these arguments in its Reply brief, this Court need not address these arguments here. Reply, ECF 153 at 5–6.

Because the Parties cite different representations as the bases for the Negligent

Misrepresentation claim, this opinion first discusses the disconnect observed in the Parties'

briefing before proceeding to the merits of the Motion.

### 1. The Parties Cite Different Representations as the Bases for the Negligent Misrepresentation Claim

The allegations explicitly cited in the "Negligent Misrepresentation" section of the

Counterclaims do not reference any specific statements made by the Payne Defendants. *See*

Counterclaims, ECF 128 ¶¶ 138–45. Instead, this section incorporates all preceding allegations in

the Counterclaims. *Id.* ¶ 138.  Accordingly, the Parties' briefing refers to different

representations in the Counterclaims to dispute whether the allegations state a claim for

Negligent Misrepresentation. Despite this disconnect, these allegations fall into two categories:

(1) the Payne Defendants' promises to comply with the Management Agreements, and (2)

statements about the Payne Defendants' competency as cattlemen. Subsections "a." and "b."

below reference the representations the Parties cite in their briefing.

### a.   Representations cited by Counterclaim Defendants:

1) "Despite knowing that [the Payne] Defendants never intended on performing the

   accounting obligations, or were incapable of performing the accounting obligations, [the

   Payne] Defendants executed the Management Agreements, stating they would perform

   [the obligations]" (the "*accounting* obligations representation")

2)  "Despite knowing that [the Payne] Defendants never intended on performing the

   payment obligations, or were incapable of performing the payment obligations, [the

   Payne] Defendants executed the Management Agreements, stating they would perform

   [the obligations]" (the "*payment* obligations representation")

3) "The Management Agreements provide that cattle shall be purchased and sold in the name of Eastgate, and 100% of the gross receipts from the sale shall be paid directly to Eastgate."

4) "Payne held himself out as an experienced cattleman with a history of successful cattle management programs."

Counterclaim Defendants' Response ("Resp."), ECF 142 at 3–4 (citing Counterclaims, ECF 128 ¶¶ 74, 79, 80, 81).

**b. Representations Cited by the Payne Defendants:**

"Payne intended to defraud [Counterclaim] Defendants, never intending to perform obligations pursuant to the Management Agreements. . . [the Payne Defendants] knowingly and intentionally ma[de] false representations that":

1) "[The Payne] Defendants would brand and tag the cattle with Eastgate's brand";

2) "[The Payne] Defendants would remit all proceeds from the sale of cattle to Eastgate";

3) "[The Payne] Defendants would keep accurate records concerning cattle"; and

4) "[The Payne] Defendants were experts raising, managing, and selling cattle."

Reply, ECF 153 at 2–3 (citing Counterclaims, ECF 128 ¶ 107).

*       *       *

As shown above, the first three representations cited by each Party involve the Payne Defendants' promises to comply with the Management Agreements, while the final representation is a statement about the Payne Defendants' competency as cattlemen.[6] The Payne

---

[6] Although the Parties do not agree on the specific allegations that they believe are relevant to state a claim for Negligent Misrepresentation, the two sets of allegations referenced in each Parties' briefing are substantially similar. Thus, for simplicity, the remainder of the opinion

PAGE 8 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PAYNE DEFENDANTS' MOTION TO DISMISS

Defendants' arguments follow from this categorization. The following sections examine the Payne Defendants' arguments for each category of representations, beginning with their promises to comply with the Management Agreements.

### 2. Representations About Future Action Cannot State a Claim for Negligent Misrepresentation

The Payne Defendants argue that a claim for negligent misrepresentation cannot be based on a promise to perform a future action. Mot., ECF 139 at 6–7; Reply, ECF 153 at 2–4. Although the Nevada Supreme Court has not considered this question, this Court joins other courts that have held that, under Nevada law, a promise to perform a future action does not state a claim for negligent misrepresentation.

"Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (citation omitted). Courts applying Nevada law "have repeatedly held that 'a negligent misrepresentation claim based on a promise of future performance does not exist.'" *Phillips v. Dignified Transition Sols.*, No. 2:13-cv-2237-GMN-VCF, 2015 WL 5056406, at *5–6 (D. Nev. Aug. 25, 2015) (citing *Hernandez v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1083 (D. Nev. 2012)).

According to these courts, there is an "inherent paradox of alleging that a party has negligently misrepresented its intentions" to perform "future conduct." *See, e.g.*, *id.* at *5. Either the defendant

> intended to perform at the time he entered the contract or he did not. If he did not intend to perform at the time he made the promise, that is an intentional misrepresentation, not a negligent

_____

cites only the representations referenced by Counterclaim Defendants in their Response, ECF 142.

misrepresentation. If he intended to perform at the time he entered the contract, then he made no misrepresentation as to his intentions.

*Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010).

Here, Counterclaim Defendants assert that the Management Agreements require the Payne Defendants to "provide a monthly accounting of all expenses incurred in the preceding month"; "pay expenses related to the management and husbandry of the cattle owned by Eastgate"; purchase and sell cattle "in the name of Eastgate, and [pay] 100% of the gross receipts from the sale [of cattle] . . . directly to Eastgate." Counterclaims, ECF 128 ¶¶ 79–81. Counterclaim Defendants allege that by entering into the Management Agreements, The Payne Defendants "stat[ed] that they would perform" their obligations. *See id.* ¶¶ 79–80. But Counterclaim Defendants cite no authority supporting the assertion that a promise to perform a future action can state a claim for negligent misrepresentation. Instead, consistent with the persuasive reasoning of courts applying Nevada law, this Court holds that the Payne Defendants' promises to comply with the Management Agreements cannot establish negligent misrepresentation.[7]

In their briefing, Counterclaim Defendants attempt to reframe these allegations as the Payne Defendants "represent[ing] they were capable of performing" the obligations in the Management Agreements, Resp., ECF 142 at 5, but this is not a fair reading of the alleged representations.

In their Response brief, Counterclaim Defendants argue:

---

[7] It is noteworthy that Counterclaim Defendants assert Fraud and Conspiracy to Commit Fraud counterclaims by alleging that the Payne Defendants misstated their intent to comply with the terms of the Management Agreements. *See* Counterclaims, ECF 128 ¶¶ 106–18. The Payne Defendants do not challenge these claims in their Motion. *See* Mot., ECF 139.

> If [the Payne] Defendants knew they were incapable of performing the accounting obligations at the time they induced [Counterclaim] Defendants to enter into the Management Agreements, but were hopeful that they would be able to learn how to do so once the programs began, then this is a negligent misrepresentation as [the Payne] Defendants failed to exert the reasonable standard of care in conveying their ability to do the work.

Resp., ECF 142 at 11. But Counterclaim Defendants' allegations include no statements by the Payne Defendants representing their present *ability* to comply with the contractual obligations, nor their hope that they could learn how to comply with the obligations. Instead, this argument is merely an attempt by Counterclaim Defendants to amend their Answer through a response brief, which is impermissible. *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and alterations omitted)); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a [pleading's] allegations is tested by a motion under Rule 12(b)(6), review is limited to the [pleading]." (internal quotation marks and alterations omitted)).

Accordingly, the Payne Defendants' alleged promises to comply with future obligations under the Management Agreements fail to state a claim for negligent misrepresentation.

### 3. The Payne Defendants' Representation About Their Competence as Cattlemen

The Payne Defendants' sole remaining alleged false representation is that "Payne held himself out as an experienced cattleman with a history of successful cattle management programs." Counterclaims, ECF 128 ¶ 74.

The Payne Defendants argue that this alleged statement cannot establish a claim for negligent misrepresentation for several reasons: (a) the representation is an opinion; (b) the representation relates to future obligations under the Management Agreements—like the other

PAGE 11 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PAYNE DEFENDANTS' MOTION TO DISMISS

representations referenced in Section A.2. above; and (c) the allegations do not plead the sixth element of a claim for negligent misrepresentation—that the Payne Defendants failed to exercise "reasonable care or competence." Reply, ECF 153 at 4–5.[8] As explained below, none of these arguments warrant dismissal.

### a. The Representation that the Payne Defendants Are Competent Cattlemen Is Not an Opinion

First, the Payne Defendants argue that Payne's representation about his competence as a cattleman is an opinion and cannot state a claim for negligent misrepresentation. Mot., ECF 139 at 7. But even assuming that opinions do not state a claim for negligent misrepresentation, Defendant's argument does not persuade this Court.

At the motion to dismiss stage, this Court is required to construe factual allegations in the light most favorable to the Counterclaim Defendants as the nonmovant. *See Daniels-Hall*, 629 F.3d at 998. Accordingly, this Court construes the representation about the Payne Defendants' competence as a factual allegation rather than an opinion and denies the Payne Defendants' Motion as to this argument.[9]

---

[8] The Payne Defendants raise several other arguments related to the Negligent Misrepresentation claim in their Reply. *See* Reply, ECF 153 at 2, 4–5 (arguing that Berg and Eastgate-NV did not enter any contract with the Payne Defendants; arguing that negligent inducement of contract is not a valid legal theory; arguing that representations in paragraph 107 of the Counterclaims do not satisfy Rule 9(b) particularity requirements). Because the Payne Defendants could have made these arguments in their original Motion and failed to do so, they have waived these arguments. *See Nathanson v. Polycom, Inc.*, Case No. 13-3476 SC, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) (citing *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003)).

[9] Even if the Payne Defendants raised this argument at the summary judgment stage, under Nevada law, "[t]he question whether a statement was intended to be given as an opinion, and was so received, is . . . one for a jury to determine, upon the peculiar circumstances of the case." *Baker v. Apttus Corp.*, Case No. 3:17-cv-00587-MMD-CBC, 2020 WL 2733942, at *11

PAGE 12 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PAYNE DEFENDANTS' MOTION TO DISMISS

### b.  The Representation that the Payne Defendants are Competent Cattlemen Is Not a Statement About Future Performance

The Payne Defendants also argue that Payne's claim to be an experienced cattleman is a statement about his ability to comply with the Management Agreements' terms in the future and cannot be the basis for a negligent misrepresentation claim for the same reasons discussed in Section A.2. Reply, ECF 153 at 4–5. The Payne Defendants' cite a single sentence in Counterclaim Defendants' Response as the basis for this argument: "At minimum, [the Payne] Defendants failed to exercise reasonable care when they made statements as to their competence to complete obligations agreed to in the Management Agreements when they knew that they were unable or incapable of doing so." Resp., ECF 142 at 12. However, the pleadings do not support the Payne Defendants' argument.

The plain meaning of this representation communicates Payne's current expertise, not his ability to perform the obligations under the Management Agreements. *See* Counterclaims, ECF 128 ¶ 74 ("Payne held himself out as an experienced cattleman with a history of successful cattle management programs"). Further, by using the language "at minimum" in their Response, Counterclaim Defendants do not concede that the allegations are limited to this one narrow interpretation and instead suggests that other interpretations of the allegation may exist. Thus, drawing reasonable inferences in favor of Counterclaim Defendants as the nonmovant, the alleged representation about Payne's competence is not a statement solely about performing future contract obligations as the Payne Defendants suggest.

---

(D. Nev. May 26, 2020) (brackets in original) (quoting *Banta v. Savage*, 12 Nev. 151, 157 (1877)).

      c.  **The Pleadings Do Not Allege that the False Representation About Payne's Competence Was Made Knowingly and Intentionally**

The Payne Defendants next argue that the representation about Payne's competence fails to satisfy the sixth element of a negligent misrepresentation claim—that Payne failed to exercise reasonable care or competence in communicating the information. *See* Reply, ECF 153 at 5; *G.K. Las Vegas Ltd. P'ship*, 460 F. Supp. 2d at 1262. They contend that, according to the allegations, the representation involves intentional or knowing misconduct, and thus cannot plead the negligence element of negligent misrepresentation. Reply, ECF 153 at 5. But this argument fails because it conflates unrelated allegations.

As discussed above, the Parties dispute which representations establish the Negligent Misrepresentation claim. *See supra* Section A.1. But Counterclaim Defendants cite a representation that does not involve intentional or knowing misconduct. *Compare* Counterclaims, ECF 128 ¶ 74 ("Payne held himself out as an experienced cattleman with a history of successful cattle management programs."), *with id.* ¶ 107(a) (The Payne Defendants "knowingly and intentionally [made] false representations that: (a) [the Payne] Defendants were experts raising, managing, and selling cattle"). Further, elsewhere in the pleadings Counterclaim Defendants allege that "[the Payne] Defendants knew that the representations were not true, *or* had no reasonable grounds for believing the representations were true when they made them." *Id.* ¶ 140 (emphasis added). Viewing these allegations in the light most favorable to Counterclaim Defendants as the non-movant, this Court holds that Counterclaim Defendants have adequately pleaded that the Payne Defendants failed to exercise reasonable care when they represented their competence as cattlemen.

\*　　\*　　\*

Because each of these arguments fails, this Court denies the Payne Defendants' Motion to Dismiss the Negligent Misrepresentation claim as to the Payne Defendants' representation about their competence as cattlemen.

## B. Consumer Fraud

The Payne Defendants next move to dismiss Counterclaim Defendants' claim for Consumer Fraud. Mot., ECF 139 at 8–11; Reply, ECF 153 at 6–10. Under the Nevada Deceptive Trade Practices Act ("NDTPA") "[a]n action may be brought by any person who is a victim of consumer fraud." N.R.S. 41.600(1). "Consumer fraud" is, among other things, a "deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." N.R.S. 41.600(2)(e).

A claim under the NDTPA requires a "victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the [claimant]." *Sattari v. Wash. Mut.*, 475 F. App'x 648, 648 (9th Cir. 2011) (quoting *Picus v. Wal–Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)). To assert Consumer Fraud, the claimant must have been "directly harmed" by the deceptive trade practice. *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1153 (9th Cir. 2011) (citation omitted). The elements of an NDTPA claim must be pleaded with particularity under Rule 9(b). *Horner v. Mortg. Elec. Registration Sys., Inc.*, 711 F. App'x 817, 818 (9th Cir. 2017) (citation omitted).

Counterclaim Defendants assert three violations of the NDTPA by the Payne Defendants: (1) knowingly passing off goods for sale as those of another person under N.R.S. 598.0915(1); (2) violating a federal statute or regulation relating to the sale of goods under N.R.S. 598.0923(1)(c); and (3) knowingly making any other false representation in a transaction under N.R.S. 598.0915(15). Counterclaims, ECF 128 ¶ 120. The Payne Defendants argue that each

violation must be dismissed. Reply, ECF 153 at 7–10. As explained below, this Court grants the Payne Defendants' Motion to Dismiss the Consumer Fraud claim under N.R.S. 598.0915(1), but denies the Payne Defendants' Motion to Dismiss the Consumer Fraud claim under N.R.S. 598.0923(1)(c) and N.R.S. 598.0915(15).[10]

### 1. Counterclaim Defendants Have Failed to State a Claim for Consumer Fraud Under N.R.S. 598.0915(1)

Under N.R.S. 598.0915(1), a person engages in a deceptive trade practice if, in the course of his business, he "[k]nowingly passes off goods or services for sale or lease as those of another person."

Counterclaim Defendants assert that the Payne Defendants passed off the Partnership's cattle as their own when they (a) failed to brand and tag the cattle with Eastgate's brand, and then (b) sold the cattle and retained the sales proceeds rather than providing them to Eastgate. Counterclaims, ECF 128 ¶¶ 88, 111, 122; Resp., ECF 142 at 15–16.

The Payne Defendants argue that the counterclaim must be dismissed under Rule 12(b)(6) for two independent reasons: first, the facts alleged do not show passing off goods as those of "another person," and second, Counterclaim Defendants were not directly harmed by the Payne Defendants' failure to properly brand and tag the cattle. Mot., ECF 139 at 9–10; Reply, ECF 153 at 8. The Payne Defendants are correct on both counts and the Court dismisses this claim.

---

[10] As in the Negligent Misrepresentation claim, the portion of Counterclaim Defendants' allegations related to Consumer Fraud does not plead specific facts establishing deceptive trade practices. *See* Counterclaims, ECF 128 ¶¶ 119–26. Instead, the Consumer Fraud claim incorporates all preceding allegations in the Counterclaims. *Id.* ¶ 119. Thus, only in their Response do Counterclaim Defendants explicitly cite the allegations that underly their Consumer Fraud claim. *See* Resp., ECF 142 at 18–24. Because the Payne Defendants could not have raised these arguments in its initial motion, they are not precluded from raising them in their reply brief.

### a. Counterclaim Defendants Have Failed to Allege Facts that the Payne Defendants Passed Off Goods of Another Person

The Payne Defendants argue that allegedly selling Eastgate's cattle as their own does not involve passing off goods for sale as those of another person. Mot., ECF 139 at 9. Counterclaim Defendants disagree. *See* Resp., ECF 142 at 15–16. At bottom, the Parties have differing interpretations of the statute—whether the word "another" modifies the person passing off the goods or the true owner of the goods. Based on the plain meaning of "another" and the statute's context, "another" refers to someone other than the person passing off the goods.

This interpretation is consistent with the case cited by the Parties, *Hakkasan LV, LLC v. VIP, UNLTD, LLC*, 63 F. Supp. 3d 1259, 1267 (D. Nev. 2014). There, the defendant sold tickets to a nightclub bearing the trademark of the plaintiff. *Id.* The court held that this conduct was a deceptive trade practice because the defendant's unauthorized use of the plaintiff's trademark created the illusion of an affiliation, connection, and association with the plaintiff when none existed. *Id.* at 1267–68. Unlike in *Hakkasan*, here the pleadings do not allege that the Payne Defendants passed off goods as those of an entity different from themselves. Thus, Counterclaim Defendants have not stated a claim for a deceptive trade practice under N.R.S. 598.0915(1).

### b. Counterclaim Defendants Have Failed to Allege a Direct Harm for its Claim Under N.R.S. 598.0915(1)

The Payne Defendants also argue that this Court should independently dismiss the Consumer Fraud claim under N.R.S. 598.0915(1) because Counterclaim Defendants have not alleged that they were "directly harmed" by the alleged deceptive trade practice. Reply, ECF 153 at 8–9. Even if the Payne Defendants' failure to tag and brand the cattle with Eastgate's brand constituted "passing off goods for sale as those of another person," this practice did not directly harm Counterclaim Defendants.

Counterclaim Defendants argue that they were harmed when the Payne Defendants' failed to pay cattle sales proceeds to Counterclaim Defendants. *See* Resp., ECF 142 at 15–16. This is confirmed by the pleadings, which allege that Counterclaim Defendants' injury is the fair market value of every cow that the Payne Defendants wrongfully transferred. Counterclaims, ECF 128 ¶ 125.[11]

However, this harm does not directly arise from the Payne Defendants' failure to tag and brand the cattle, rather their subsequent failure to pay Counterclaim Defendants after selling those cattle. Under the Management Agreements the Payne Defendants were responsible for selling the cattle on behalf of the Partnership and then remitting these proceeds to Counterclaim Defendants. *See id.* ¶ 107(c). Thus, there would be no harm to Counterclaim Defendants if the Payne Defendants had failed to properly brand and tag the Eastgate cattle, and nonetheless remitted the sales proceeds to Counterclaim Defendants. *See id.* ¶ 81. Accordingly, Counterclaim Defendants have not alleged a direct harm from the Payne Defendants' failure to tag and brand the cattle with Eastgate's brand.

\*      \*      \*

Because Counterclaim Defendants have failed to allege facts that (1) the Payne Defendants passed off goods for sale as those of another person, and (2) Counterclaim Defendants suffered a direct harm from the Payne Defendants' failure to tag and brand the cattle with Eastgate's brand, Counterclaim Defendants have failed to state a claim for consumer fraud under N.R.S. 598.0915(1).

---

[11] Although the Counterclaims also allege Counterclaim Defendants were harmed by the Payne Defendants mismanaging and losing cattle, these examples do not involve the alleged deceptive trade practice here. *See* Counterclaims, ECF 128 ¶ 125; N.R.S. 598.0915(1) (defining a deceptive trade practice as passing off goods for sale as those of another person).

PAGE 18 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PAYNE DEFENDANTS' MOTION TO DISMISS

### 2. Counterclaim Defendants Have Stated a Claim for Consumer Fraud Under N.R.S. 598.0923(1)(c)

Under N.R.S. 598.0923(1)(c) a person engages in a deceptive trade practice when in the course of his business, he knowingly violates a federal statute or regulation relating to the sale of goods.

Counterclaim Defendants assert that the Payne Defendants committed this deceptive trade practice because "on April 3, 2022 . . . [the Payne] Defendants entered into a stipulation agreement with the U.S. Department of Agriculture due to regulatory violations." Counterclaims, ECF 128 ¶ 123. "These violations stemmed from [the Payne] Defendants' failure to maintain a custodial account for cattle sale proceeds for the benefit of Eastgate." *Id.*

The Payne Defendants argue that Counterclaim Defendants fail to state a claim for Consumer Fraud under N.R.S. 598.0923(1)(c) because there are no allegations that the Payne Defendants' failure to maintain custodial bank accounts directly harmed Counterclaim Defendants. Reply, ECF 152 at 9. According to the Payne Defendants, Counterclaim Defendants could only have stated a claim under N.R.S. 598.0923(1)(c) had they alleged that Eastgate cattle were sold on the two dates relevant to the stipulation, or that Eastgate was not paid for cattle sold on those dates. *Id.*[12]

The Counterclaim Defendants allege a direct harm from the regulatory violation. The Counterclaims specifically allege that these custodial bank account violations related to cattle

---

[12] The Payne Defendants also argue that the alleged USDA regulatory violation does not state a claim for Consumer Fraud because the violation was promptly cured and there is no evidence that the shortfall in the custodial account funds were not distributed to their rightful owners. Mot., ECF 139 at 11. However, these facts are not alleged in the counterclaims. Thus, this Court may not consider these arguments because its review is limited to the pleadings when deciding a motion under Rule 12(b)(6). *See Lee*, 250 F.3d at 688.

sales proceeds for the benefit of Eastgate. Counterclaims, ECF 128 ¶ 123 ("These violations stemmed from [the Payne] Defendants' failure to maintain a custodial account for cattle sale proceeds for the benefit of Eastgate."). The Counterclaims also allege that the Payne Defendants "failed to remit payments to Eastgate after the sale and conversion of Eastgate's cattle." *Id.* ¶ 88. Drawing reasonable inferences in favor of Counterclaim Defendants as the nonmovant, these allegations establish that Counterclaim Defendants suffered a direct harm from the Payne Defendants' alleged regulatory violation.

### 3. Counterclaim Defendants Have Stated a Claim for Consumer Fraud Under N.R.S. 598.0915(15)

Under N.R.S. 598.0915(15) a person engages in a deceptive trade practice if, in the course of his or her business or occupation, he or she "[k]nowingly makes any other false representation in a transaction."

Counterclaim Defendants assert that the Payne Defendants committed this deceptive trade practice when they made a series of false representations that:

a. [The Payne] Defendants were experts raising, managing, and selling cattle;

b. [The Payne] Defendants would brand and tag the cattle with Eastgate's brand;

c. [The Payne] Defendants would remit all proceeds from the sale of cattle to Eastgate; and

d. [The Payne] Defendants would keep accurate records concerning cattle.

Counterclaims, ECF 128 ¶¶ 107, 119–20. According to the Counterclaims, the Payne Defendants never intended to perform their obligations under the Management Agreements. *Id.* ¶ 107.

Counterclaim Defendants have alleged several false representations here. The first allegation claims that the Payne Defendants misrepresented their competence by falsely claiming to be "experts raising, managing, and selling cattle." *Id.* ¶ 107(a). The remaining allegations

PAGE 20 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PAYNE DEFENDANTS' MOTION TO DISMISS

claim that the Payne Defendants' misstated their intent to perform their obligations under the Management Agreements. *See id.* ¶ 107(b)–(d); Restatement (Second) of Torts § 530 (Am. L. Inst. 1977) ("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."). Each are false representations under N.R.S. 598.0915(15).

The Payne Defendants counter this conclusion, arguing that false representations must be an existing misstatement of fact, not a misstatement related to a future fact. Reply, ECF 153 at 9 (citing *Phillips v. Dignified Transition Sols.*, No. 2:13-cv-2237-GMN-VCF, 2015 WL 5056406 (D. Nev. Aug. 25, 2015)). But *Phillips* is readily distinguishable.

In *Phillips*, the district court held that the defendants' statements involving the planned close of a property sale were predictions and estimates about future activity, and "could not have been false statements of existing fact" violating the NDTPA. *Id.* at *6. But the allegations here are not merely predictions about the future. Instead, Counterclaim Defendants allege that the Payne Defendants misrepresented their *then-present* competence by falsely claiming to be "experts raising, managing, and selling cattle." Counterclaims, ECF 128 ¶ 107(a). The remaining false representations allege that the Payne Defendants' misstated their *then-present* intent to perform their obligations under the Management Agreements. *See id.* ¶ 107(b)–(d); *Phillips*, 2015 WL 5056406, at *6 (if a defendant "did not intend to perform at the time he made the promise, [then] that is an intentional misrepresentation." (citation omitted)). Accordingly, unlike in *Phillips*, these alleged representations are misstatements of existing fact.

The Payne Defendants also argue that Counterclaim Defendants have failed to allege a causal relationship between the misrepresentations and their harm, Reply, ECF 153 at 10, but this assertion is belied by the pleadings. Counterclaim Defendants assert that these

misrepresentations—including the Payne Defendants' promise to pay cattle sales proceeds to Eastgate—induced them to enter the Management Agreements. *See* Counterclaims, ECF 128 ¶¶ 107, 110. Then, because the Payne Defendants never intended to remit cattle sales proceeds to Counterclaim Defendants, they ultimately withheld those funds, damaging Counterclaim Defendants. *Id.* ¶¶ 88, 99. Thus, the Payne Defendants falsely representing their competence and present intent to comply with the Management Agreements directly harmed Counterclaim Defendants.

Accordingly, the misrepresentations alleged by Counterclaim Defendants state a claim for Consumer Fraud under N.R.S. 598.0915(15).

///

///

///

## CONCLUSION

For the reasons stated above, this Court grants in part and denies in part the Payne Defendants' Motion to Dismiss, ECF 139, as follows:

- GRANT WITHOUT LEAVE TO AMEND AND WITH PREJUDICE:

  o The Payne Defendants' Motion to Dismiss Counterclaim Defendants' Negligent Misrepresentation claim as to promises to comply with the Management Agreements.

  o The Payne Defendants' Motion to Dismiss Counterclaim Defendants' Consumer Fraud claim under N.R.S. 598.0915(1).

- DENY:

  o The Payne Defendants' Motion to Dismiss Counterclaim Defendants' Negligent Misrepresentation claim as to representations related to their competence as cattlemen.

  o The Payne Defendants' Motion to Dismiss Counterclaim Defendants' Consumer Fraud claim under N.R.S. 598.0923(1)(c).

○   The Payne Defendants' Motion to Dismiss Counterclaim Defendants' Consumer Fraud claim under N.R.S. 598.0915(15).

**IT IS SO ORDERED.**

DATED this 21st day of June, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge