# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREAT WEST CAPITAL, LLC**, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**JACK PAYNE**, an individual; **JUNIPER MOUNTAIN CATTLE, LLC**, a Nevada limited liability company; and **NEVADA LIVESTOCK MARKETING, LLC**, a Nevada limited liability company,<br><br>Defendants.<br><br>**EASTGATE CATTLE CO. LLC**, a Delaware limited liability company; and **ARTHUR H. BERG**, an individual,<br><br>Counterclaim-Defendants. | Case No. 3:22-cv-00768-IM<br><br>**OPINION AND ORDER ON POST-TRIAL MOTIONS** |

Jonathan M. Radmacher & J. Kurt Kraemer, McEwen Gisvold LLP, 1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204. Attorneys for Plaintiff and Counterclaim-Defendants.

Erick J. Haynie, Timberline Law Group, 7128 SW Gonzaga Street, Suite 100, Portland, OR 97223; Christian W. Marcelo, Perkins Coie LLP, 1201 Third Avenue, Suite 4900, Seattle, WA 98101; Renée E. Rothauge, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; and Tonya Van Walleghem, P.O. Box 1933, Lake Oswego, OR 97035. Attorneys for Defendants.

PAGE 1 – OPINION & ORDER ON POST-TRIAL MOTIONS

**IMMERGUT, District Judge.**

Now before this Court are a Motion for Judgment as a Matter of Law, ECF 372, and a Motion to Amend the Judgment, ECF 373, filed by Plaintiff Great West Capital and Counterclaim-Defendants Eastgate Cattle Co. and Arthur H. Berg (collectively "Plaintiffs"), as well as a Motion for Judgment as a Matter of Law or to Amend the Judgment, ECF 379, filed by Defendants Jack Payne, Juniper Mountain Cattle, and Nevada Livestock Marketing (collectively "Defendants").[1] For the reasons below, this Court denies Plaintiffs' motion for judgment as a matter of law, grants in part Plaintiffs' motion to amend the judgment to add awards of interest, and grants in part Defendants' motion to reduce the punitive damages award and offset certain awards of damages against each other.

## BACKGROUND

Plaintiff Great West Capital sued Defendants Jack Payne, Juniper Mountain Cattle, and Nevada Livestock Marketing, alleging Defendants breached their contracts with Plaintiff and committed fraud under Nevada law. First Amended Complaint ("FAC"), ECF 68. Defendants brought counterclaims against Plaintiff and Counterclaim-Defendants Eastgate Cattle Co. and Arthur Berg, alleging that Eastgate and Berg breached their contracts with Defendants and unjustly enriched themselves, and that Great West, Eastgate, and Berg committed fraud. Answer and Counterclaims, ECF 117. Counterclaim-Defendant Eastgate asserted counterclaims for breach of contract, fraud, and consumer fraud against Defendants. Third Party Defendants' Counterclaims, ECF 128. The factual background regarding the claims is explained in previous

---

[1] This Court will address Plaintiff and Counterclaim-Defendants' motion for attorney's fees, ECF 329, and Defendants' motion for attorney's fees, ECF 339, and bill of costs, ECF 338, in a separate order.

orders on the parties' motions to dismiss and motions for summary judgment. *See* ECF 118, 168, 200, 231.

The case proceeded to a jury trial on January 14, 2025. ECF 298. Both sides moved for judgment as a matter of law under Rule 50(a). ECF 307, 308. This Court granted both motions in part and otherwise reserved ruling on the motions. ECF 310. After a seven-day jury trial, the jury returned a split verdict, finding for Plaintiff Great West on its breach of contract and fraud claims, for Counterclaim-Defendant Eastgate on its breach of contract and fraud claims, and for Defendants on their breach of contract and unjust enrichment claims against Eastgate. ECF 317. The jury awarded $3,645,002 in compensatory damages and $1,290,000 in punitive damages to Plaintiffs, and $1,612,000 in compensatory damages to Defendants. *Id.* After the parties submitted competing forms of judgment, ECF 321, 324, 325, this Court entered judgment on February 27, 2025, ECF 328. The judgment largely tracked the jury's verdict, but this Court reduced the punitive damages awarded on Great West's fraud claim to $300,000 to reflect Nevada's statutory cap on punitive damages. *Id.* at 2 n.1.

Anticipating significant post-trial work, including appeals, this Court ordered the parties to attempt to settle the matter and stayed post-trial deadlines to facilitate a judicial settlement conference with Magistrate Judge Acosta. ECF 359. The case did not settle, and both Plaintiffs and Defendants now move for judgment as a matter of law under Rule 50(b). ECF 372, 379. Plaintiffs move in the alternative for a new trial on Defendants' unjust enrichment claim. ECF 372. Both sides also move to amend the judgment under Rule 59(e). ECF 373, 379.

## STANDARDS

A Rule 50(b) motion for judgment as a matter of law is proper when "the evidence permits only one conclusion and that conclusion is contrary to the jury's verdict." *Martin v. Cal. Dep't of Veterans Affs.*, 560 F.3d 1042, 1046 (9th Cir. 2009). A "jury's verdict must be upheld if

it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). The court "must view the evidence in the light most favorable to the nonmoving party" and "draw all reasonable inferences in that party's favor." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The reviewing court "must disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000), and "may not substitute its view of the evidence for that of the jury," *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). This standard means that the court "may not make credibility determinations or weigh the evidence" on a Rule 50(b) motion. *Reeves*, 530 U.S. at 150.

A Rule 59(a) motion for a new trial requires a court "weigh the evidence as the court saw it" and "set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (cleaned up). A court should not grant a new trial unless it is "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (citation omitted). In considering a Rule 59(a) motion, however, the court "is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

Rule 59(e) ordinarily permits a court to alter or amend a judgment if doing so "is necessary to correct manifest errors of law or fact upon which the judgment rests" or "to prevent manifest injustice," among other listed reasons. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111

(9th Cir. 2011). But Rule 59(e) is not limited to those situations, *see id.* at 1112, and may also be appropriate when, as here, the district court has stated that the parties may move to amend the judgment on particular issues. Judgment, ECF 328 at 2 n.1, 3 n.2.

### DISCUSSION

This Court begins with Defendants' motion for judgment as a matter of law on Plaintiffs' fraud claims. Concluding that the jury's verdict on these claims is supported by substantial evidence and not barred by the economic loss rule, this Court then addresses whether the punitive damages awards associated with those claims should be reduced, as Defendants argue, or restored, as Plaintiffs argue. This Court concludes that an analysis of the reprehensibility of Defendants' conduct and the penalties imposed in comparable cases requires a reduction in the punitive damages award to $300,000.

This Court then proceeds to address Defendants' motion to offset the jury's awards of damages. This Court finds that the damages awards on the breach of contract claims brought by Eastgate and Great West are duplicative and reduces the award to avoid duplication of damages. This Court further determines that Defendants' award against Eastgate should be offset with Great West's award against Defendants. This Court also denies Plaintiffs' motion to strike or hold a new trial on the unjust enrichment claim. Finally, this Court amends the judgment to award and set rates for pre- and postjudgment interest.

**A. Defendants' Motion for Judgment as a Matter of Law (ECF 379)**

    **1. Fraud Claims**

The jury returned a verdict for Great West and Eastgate on their fraud claims against Defendants. Jury Verdict, ECF 317 at 3–4. Defendants move for judgment as a matter of law on Great West's and Eastgate's fraud claims, arguing that there is insufficient evidence to support the jury's verdict in favor of Plaintiffs on these claims. Motion, ECF 379 at 5. Defendants

contend that there was no evidence presented that Jack Payne made any misrepresentations to Great West or that he intentionally made any false statements. *Id.* at 5–9. Defendants also contend that Great West's fraud claim is barred by the economic loss rule. *Id.* at 9. Defendants make similar arguments on Eastgate's fraud claim. *Id.* at 9–11.

Viewing the evidence in the light most favorable to Plaintiffs and making all reasonable inferences in their favor, this Court finds that Plaintiffs presented sufficient evidence at trial to support the jury's verdict on their fraud claims. This Court also concludes that the economic loss rule does not bar the fraud claims.

### a. Sufficient Evidence

Great West's fraud claim alleged that Defendants made a series of false representations to Great West, including that: (1) they were experts in managing cattle, (2) they would brand and tag all Great West program cattle, (3) they would care for the cattle, (4) they would not sell Great West's cattle without notice, and (5) they would keep accurate records of the cattle. FAC, ECF 68 ¶ 75. Great West alleged that these representations were false and that Defendants never intended to perform these promises. *Id.* ¶ 77. Eastgate's fraud claim alleged that Defendants represented that: (1) they were experts in managing cattle, (2) they would brand and tag all Eastgate cattle, (3) they would remit proceeds from the sale of cattle to Eastgate, and (4) they would keep accurate records of the cattle. Answer and Counterclaims, ECF 128 ¶ 107. Eastgate alleged that these representations were false and that Defendants never intended to perform these promises. *Id.* ¶¶ 107, 110.

Under Nevada law, "[t]he mere failure to fulfill a promise or perform in the future . . . will not give rise to a fraud claim absent evidence that the promisor had no intention to perform at the time the promise was made." *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). Defendants contend that, even if they did not perform these promises, there is no evidence

that Mr. Payne knowingly made these promises with the intention not to perform. Motion, ECF 379 at 7–10. This Court finds that there is sufficient evidence in the record to support the jury's verdict and award of nominal damages on the fraud claims.

Plaintiffs' theory of fraud is that Mr. Payne had no intent to perform at the time he made the promises in the contract because Defendants "did not do business that way" and lacked "the capacity of doing the things that they promised." Response, ECF 386 at 3. Plaintiffs reason that, because Payne "unambiguously said he did not read the documents" containing his promises, he could never have intended to perform the promises he did not read. *Id.*

Defendants argue that fraudulent intent cannot be inferred solely from a failure to read the contracts at issue. Reply, ECF 395 at 6. But because "direct proof of one's specific wrongful intent is rarely available," courts considering fraud claims frequently infer intent from circumstantial evidence. *United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007) (citation omitted). A contracting party's failure to read a contract may not by itself be sufficient to establish fraud, but the jury could consider this as circumstantial evidence that could support a finding of intent.[2] *See, e.g.*, *In re Retz*, 606 F.3d 1189, 1199 (9th Cir. 2010) (noting that a bankruptcy debtor "signed the [filings] without reading them" as one piece of circumstantial evidence supporting an inference of fraudulent intent). Likewise, while the failure to perform the contracts does not establish that Defendants never intended to perform, that subsequent conduct is relevant to Defendants' intent at the time of formation. *See Miller v. Nat'l Am. Life Ins. Co.*,

---

[2] Defendants also point out that no evidence was presented to suggest Payne did not read the contracts with Great West unlike the contracts with Eastgate. *See* Motion, ECF 376 at 8 (pointing out that Plaintiffs did not question Payne about the Great West loan documents, including whether or not he read them). This Court finds that the jury could reasonably infer that Payne did not read the Great West loan documents based on testimony about his general contracting and record-keeping practices, including the fact that he did not read the Eastgate contracts.

126 Cal. Rptr. 731, 735 (1976) (considering subsequent conduct as supporting "an inference of prior intent not to fulfill [that party's] representations"); *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (noting that "the scheme itself may be probative circumstantial evidence of an intent to defraud").

While it may be possible to find differently on the fraud claims based on the evidence presented at trial, this Court is required at this stage to "disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves*, 530 U.S. at 151, and "may not substitute its view of the evidence for that of the jury," *Johnson*, 251 F.3d at 1227 (9th Cir. 2001). Viewing the evidence in the light most favorable to Plaintiffs and drawing all inferences in their favor, *Go Daddy Software*, 581 F.3d at 961, the Court cannot conclude that the jury, after being presented with a full picture of the complex negotiations between to the parties, could not have reasonably found that Defendants' conduct constituted fraud.[3]

Defendants also argue that no misrepresentations were made to Great West specifically. Motion, ECF 379 at 6. The basis for the Great West's fraud claim was set out in the First Amended Complaint, ECF 68 ¶ 75, and in the Pretrial Order, ECF 280 at 8, which identifies the same representations. Great West claimed that Defendants fraudulently induced it into offering Defendants the loan by promising that they would brand and tag the cattle, take care of the cattle, provide notice to Great West before selling the cattle, and keep accurate records of the cattle. FAC, ECF 68 ¶ 75. Viewing the evidence in the light most favorable to Plaintiffs and drawing all

---

[3] This Court notes that Plaintiffs do not cite to exact passages in the trial transcripts and do not attach excerpts from the transcript. "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). This Court nonetheless analyzes Defendants' motion on the merits.

inferences in their favor, the jury could have found that Mr. Payne made at least one of these promises without intending to perform.

### b. Economic Loss Rule

Defendants also contend that Great West's fraud claim is duplicative of its breach of contract claim and should therefore be barred by the economic loss rule. Motion, ECF 379 at 9. Defendants argue that the fraud claim is based on the same conduct and seeks the same damages as the breach of contract claim, thus falling within the rule's ambit. *Id.* Eastgate's fraud claim would logically be barred for the same reason. *Id.* at 11.

The economic loss rule defines "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby generally encourages citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009) (cleaned up). Under the rule, "a plaintiff generally cannot recover on an unintentional tort claim for purely economic losses." *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1268 (Nev. 2014). Nevada courts have held that the economic loss rule does not bar intentional torts. *Halcrow, Inc. v. Eighth Jud. Dist. Court*, 302 P.3d 1148, 1154 n.2 (Nev. 2013) (citing *Terracon Consultants*, 206 P.3d at 84–86). Fraud is an intentional tort and, even when "intertwined with" a contract, the economic loss rule generally does not apply because defendants have an independent, non-contractual duty not to engage in fraud. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879–80 (9th Cir. 2007) (applying Nevada law).

Defendants contend that the economic loss rule should apply to intentional tort claims that duplicate breach of contract claims. Motion, ECF 379 at 9. The Nevada Supreme Court has stated that the economic loss doctrine "may bar recovery for tort claims premised on a defendant's breach of contract." *Mitman v. LA 1, LLC*, 539 P.3d 1177, at *5 (Nev. 2023) (table

PAGE 9 – OPINION & ORDER ON POST-TRIAL MOTIONS

op.). But Plaintiffs' fraud claims allege fraud in the inducement, *see* FAC, ECF 68 ¶ 75

("Defendants induced Great West into making the loan . . . ."); Third Party Defendants' Answer,

ECF 128 ¶ 75 ("Payne, NLM, and Juniper induced Eastgate and Berg into entering into and

continuing the cattle operation . . . ."), not fraud in the execution or promissory fraud. "Unlike a

fraud claim that duplicates a contract claim by alleging misrepresentation about the

characteristics . . . or subject of the contract," the claims here are not "mere contract claim[s]

cloaked in the language of tort." *Giles*, 494 F.3d at 880. Plaintiffs' fraud claims are therefore not

barred by the economic loss rule.

### 2. Punitive Damages

The jury's verdict awarded $1 in damages and $1,000,000 in punitive damages on

Plaintiff Great West Capital's fraud claim, as well as $1 in damages and $290,000 in punitive

damages on Counterclaim-Defendant Eastgate Cattle's fraud claim. Jury Verdict, ECF 317. In

the initial judgment entered in this action, this Court reduced the award of punitive damages on

Great West Capital's fraud claim to $300,000, reflecting Nevada's statutory cap on punitive

damages. Judgment, ECF 328 at 2 & n.1 (citing Nev. Rev. Stat. § 42.005(1)(a)).

Defendants move to strike the punitive damages award. First, they argue that the jury did

not award any compensatory damages, as would be necessary to support an award of punitive

damages.[4] Motion, ECF 379 at 12–14. Next, Defendants argue that the award of punitive

damages should be reduced to comply with constitutional requirements. *Id.* at 14–18. This Court

concludes that nominal damages are a form of compensatory damages under Nevada law that

---

[4] Defendants raise a pair of other arguments that rest on the idea that there was insufficient evidence to support judgment for Plaintiffs on the fraud claims, negating an award of punitive damages. Motion, ECF 379 at 11–12. Those arguments are resolved by this Court's ruling on the fraud claims above. The jury's verdict on the fraud claim provides the requisite finding of fraud to award punitive damages under Nev. Rev. Stat. § 42.005.

may support an award of punitive damages, but that the jury's award of punitive damages exceeds constitutional limit. The Court accordingly reduces the award of punitive damages to $300,000.

### a.  Compensatory Damages

A fraud claim under Nevada law requires establishing "[d]amage to the plaintiff" resulting from plaintiff's reliance on a false representation made by the defendant. *Bulbman*, 825 P.2d at 592. A judgment awarding punitive damages on a fraud claim cannot stand without a judgment for compensatory damages on the same claim. Nev. Rev. Stat. § 42.005(1); *see Wolf v. Bonanza Inv. Co.*, 360 P.2d 360, 362 (Nev. 1961) ("[I]n the absence of a judgment for actual damages, there could not have been a valid judgment for exemplary damages."); *S.J. Amoroso Constr. Co. v. Lazovich & Lazovich*, 810 P.2d 775, 777 (Nev. 1991) ("Punitive damages . . . are precluded in the absence of compensatory damages for the claim sustaining the punitive award.").

The jury returned a verdict of nominal damages on Plaintiffs' fraud claims. ECF 317 at 3–4. It is unclear "whether nominal damages are considered compensatory under Nevada law." *JB Carter Enters., LLC v. Elavon, Inc.*, No. 23-16142, 2025 WL 17112, at *3 (9th Cir. Jan. 2, 2025). This Court could locate no Nevada case law directly addressing this issue. In the absence of applicable case law, Nevada courts look to California case law, *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996), particularly when the statutes involved are identical, *see Craigo v. Circus-Circus Enters.*, 786 P.2d 22, 23 (Nev. 1990) (noting that "Nevada's statute on punitive damages is a verbatim copy of the California punitive damages statute," and was "presumedly adopted with the construction given it by the highest court of the sister state"). California courts have long interpreted nominal damages as a form of compensatory damages that may support an award of punitive damages under this statute. *See California v. Altus Fin., S.A.*, 540 F.3d 992,

PAGE 11 – OPINION & ORDER ON POST-TRIAL MOTIONS

1000–01 (9th Cir. 2008). In the absence of applicable Nevada case law, this Court presumes the Nevada Supreme Court would follow the well-established California law interpreting the statute and concludes that an award of nominal damages may justify an award of punitive damages in this case.

### b. Amount of Punitive Damages

In the alternative, Defendants argue that the amount of punitive damages awarded on the fraud claims is grossly excessive. Motion, ECF 379 at 14. Applying the guideposts from *BMW of North America v. Gore*, 517 U.S. 559 (1996), Defendants argue the award must be reduced to avoid entering an unconstitutional judgment.[5] *Id.*

The Due Process Clauses of the U.S. Constitution limit permissible awards of punitive damages. *See Gore*, 517 U.S. 559; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). In *Gore*, the Supreme Court identified three factors relevant to evaluating the constitutionality of a punitive damages award: (1) the reprehensibility of the defendant's conduct, (2) the disparity between the awards of compensatory and punitive damages, and (3) the difference between the punitive damages and civil penalties authorized or imposed in comparable cases. 559 U.S. at 575. The Nevada Supreme Court has adopted the same set of guideposts for reviewing an award of punitive damages under Nevada law. *Bongiovi v. Sullivan*, 138 P.3d 433, 451–52 (Nev. 2006). Based on the first and third guideposts,[6] this Court finds that

---

[5] Defendants move to reduce the award under Rule 59(e). Plaintiffs argue Defendants should have instead moved for remittitur. Response, ECF 386 at 7. Defendants' Rule 59(e) motion "is essentially a request for a remittitur," *Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020), and regardless, this Court has a "mandatory duty to correct an unconstitutionally excessive verdict," *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999), so the form of the motion is not important to this Court's resolution of the issue.

[6] The second guidepost, the ratio between the compensatory and punitive damages awards, is not a reliable measure of excessiveness when the jury awards nominal damages. *See Arizona v. ASARCO LLC*, 773 F.3d 1050, 1058 (9th Cir. 2014) (en banc) ("When only nominal

the award of punitive damages in this case exceeds constitutional limits and therefore reduces the award to $150,000 on each of Plaintiffs' two fraud claims.

### i.    Reprehensibility

The reprehensibility of the defendant's conduct is "the most important indicium of the reasonableness" of the punitive damages award. *Gore*, 517 U.S. at 575. Relevant considerations in assessing reprehensibility include whether: (1) the harm caused was physical or economic, (2) the tortious conduct "evinced an indifference to or a reckless disregard of the health or safety of others," (3) the target of the conduct "had financial vulnerability," (4) the conduct was isolated or repeated, and (5) "the harm was the result of intentional malice, trickery, or deceit." *State Farm*, 538 U.S. at 419.

The first three considerations weigh against a substantial award of punitive damages. Defendants are accused only of economic harm that did not implicate the health or safety of anyone, and Plaintiffs presented no evidence of their financial vulnerability. The fourth and fifth factors, however, weigh in Plaintiffs' favor. The jury's verdict reflects a finding that Defendants engaged in some fraudulent conduct in inducing Plaintiffs to enter the contracts at issue and necessarily implies that Defendants acted intentionally. *See Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010) (noting that misrepresentations about future performance must be intentionally fraudulent, not merely negligent). Weighing these factors together, this Court finds that this case is "toward the lower end of the spectrum of malevolence found in punitive damages cases." *Ace Truck & Equip. Rentals, Inc. v. Kahn*, 746 P.2d 132, 137 (Nev. 1987). The jury's verdict on the fraud claim reflects a finding of some level of "trickery or

_____

damages are awarded, application of a *Gore* ratio analysis is not appropriate."). This Court therefore disregards the ratio and focuses the *Gore* analysis on the first and third guideposts.

deceit," which does not amount to the worst kind of tortious conduct justifying punitive damages. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001) (tracing a "hierarchy of reprehensibility," with acts of physical violence at the highest rung and "acts of omission and mere negligence" at the lowest). Defendants' conduct, though fraudulent, does not fall "at the upper end of the blameworthiness continuum" that would "justify a substantial punitive damage award." *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 82 (1st Cir. 2001).

### ii. Comparable misconduct

This Court also considers "the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'" *State Farm*, 538 U.S. at 428 (quoting *Gore*, 517 U.S. at 575). In assessing this factor, this Court may "[r]eference . . . other awards in similar cases," *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990), as well as the "statutory parameters" defined by Nevada's punitive damages statute, *see Wyeth v. Rowatt*, 244 P.3d 765, 785 (Nev. 2010).

Defendants analogize this case to *Exposure Graphics v. Rapid Mountain Display*, where the Nevada Supreme Court found that an award of approximately $250,000 in punitive damages was grossly excessive in a case involving fraud in "a simple business sales transaction." 128 Nev. 895, at *2 (2012) (table op.). Defendants also compare this case to *Cervantes v. Emerald Cascade Restaurant Systems, Inc.*, where the court awarded $5,398 in punitive damages on an award of $53.98 in compensatory damages. No. 11-cv-242, 2016 WL 4530462, at *2 (D. Nev. Aug. 30, 2016). Other Nevada cases have, however, awarded punitive damages up to the statutory cap on an award of nominal damages. *Miyayama v. Burke*, No. 20-cv-1683, 2025 WL 1540791, at *17–*18 (D. Nev. May 9, 2025). Plaintiffs point to no analogous cases, and this Court could not find any, awarding greater than $300,000 in punitive damages under similar circumstances.

PAGE 14 – OPINION & ORDER ON POST-TRIAL MOTIONS

Considering the limited reprehensibility of Defendants' conduct and the analogous cases described above, this Court finds that the Due Process Clauses require reducing the award of punitive damages. The Court reduces the award of punitive damages to Great West Capital to $150,000 and to Eastgate to $150,000. This combined award reflects the Nevada statutory cap of $300,000, which also matches the largest award of punitive damages on an award of nominal damages that this Court could identify. *See Miyayama*, 2025 WL 1540791, at *18. Awarding substantively above that amount simply because two closely related corporate parties brought fraud claims based on similar conduct would exceed the limits the Due Process Clauses place on awards of punitive damages.

### 3. Offset

Defendants move for judgment as a matter of law on two similar arguments that this Court will group under the label of "offset." First, Defendants argue that damages awarded to Eastgate on Eastgate's breach of contract claim should be applied to the breach of contract damages awarded to Great West, to avoid "duplicative recovery for Plaintiffs." Motion, ECF 379 at 19. Next, Defendants argue their award against Eastgate should offset with Great West's award against Defendants. *Id.* at 21. This Court finds the breach of contract awards are duplicative and further agrees that Defendants' award against Eastgate should be set off with Great West's award against Defendants.

### a. Breach of Contract Damages

Defendants first argue that the terms of the contracts between the parties require that the damages awarded to Eastgate on Eastgate's breach of contract claim must be applied against the award to Great West on Great West's breach of contract claim. Motion, ECF 379 at 19. Defendants reason that the only basis for Eastgate's recovery is the 1,099 missing cattle, *id.*, and the only basis for Great West's recovery is the unpaid loan balance, *id.* at 20. Defendants

conclude that, because the contract would have obligated Eastgate to use the funds it recovered from selling the cattle to make payments on the loan, this Court should apply Eastgate's recovery against Great West's damages. *Id.* Defendants contend that Great West and Eastgate would otherwise recover twice: once for the value of Eastgate's cattle, and once for the value of those payments on Great West's note. *Id.*

"The law abhors duplicative recoveries." *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016) (quoting *Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir. 1991)). A district court must therefore ensure that a party "recovers only once." *Id.*; *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery . . . ."). Under Nevada law, the double-recovery doctrine prohibits a plaintiff from recovering additional damages after he has already recovered the totality of his damages. *Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010).

Plaintiffs argue that Defendants waived this argument by failing to ask for a special verdict or otherwise seek an answer from the jury before the jury was dismissed. Parties must raise any objections to the verdict form itself before the jury is dismissed, *see Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1110 (9th Cir. 2001), and must raise any objections to an inconsistent jury verdict at the same time, *see Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1030–36 (9th Cir. 2003). But Defendants do not rest their argument on a flaw in the jury instructions or verdict form, nor do they argue that the jury verdict is inconsistent; their argument is only that the judgment awards duplicative damages to Plaintiffs. "A judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law." *Duran v. Town of Cicero*, 653 F.3d 632, 642 (7th Cir. 2011). While this Court must view the evidence in the light most favorable to the jury's verdict and draw all reasonable inferences to support the

verdict. *Go Daddy Software*, 581 F.3d at 961, if the awards are duplicative, this Court has a duty

to identify and correct the award, *see Teutscher*, 835 F.3d at 954; *see also United Phosphorus,*

*Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000) (stating that courts have an

obligation to *sua sponte* reduce a judgment that awards duplicate damages).

This Court determines that the awards to Eastgate and Great West on the breach of

contract claims are duplicative and must be reduced. Eastgate's breach of contract damages

reflect the missing 1,099 cattle, Trial Transcript, ECF 357 at 1587:5–:17, which Defendants'

expert valued at approximately $1,000 a head, *id.*, ECF 355 at 1130:15–:17, producing the jury's

award of $1,099,000, Jury Verdict, ECF 317 at 4. Had Defendants not breached their contract

with Eastgate, the jury's verdict reflects that Eastgate would have been able to sell those 1,099

missing cattle and receive $1,099,000.

But Eastgate was a co-borrower with Defendants on their loan. *See* Promissory Note,

ECF 340-13 at 1. And under the contracts between Eastgate and Defendants, Eastgate's proceeds

from the sale of the parties' cattle was required to be distributed "[f]irst, and immediately, to

repayment of amounts owning under the Notes." Open/Bred Cow Profit Sharing Agreement,

ECF 340-7, § 5; Yearling Profit Sharing Agreement, ECF 340-8, § 5. Had Eastgate sold the

1,099 cattle, in other words, it would not have kept the $1,099,000; unless the Great West note

was fully paid down, it would have been obligated by contract to apply it to the debt owed to

Great West.

Great West's breach of contract claim is more straightforward: Great West extended a

loan to Defendants and Eastgate that they failed to repay. Its damages are the total amount owing

on that loan, which the jury calculated to be $2,546,000. Jury Verdict, ECF 317 at 2. As

explained above, Eastgate's sale proceeds would have been applied to reduce that amount. This

Court will therefore offset Eastgate's damages against Great West's damages to avoid duplicative recovery. Allowing the current judgment to stand would allow Plaintiffs to recover the full value of the unpaid loan, as well as the value of cattle sales that would have been applied to reduce the loan.

Plaintiffs suggest that, rather than reflecting an award of duplicate damages, the jury's verdict could reflect a finding that "if Defendants had properly cared for the purchased cattle and their offspring, Great West would have been paid in full, and Eastgate would have reaped $1,099,000 in profits." Response, ECF 386 at 8. Plaintiffs cite no evidence that would support this theory from which the jury could reasonably reach this conclusion, and did not make a lost-profits arguments at trial. Plaintiffs have not identified a reasonable interpretation of the jury's verdict that would render these awards non-duplicative. This Court therefore offsets these awards to ensure that Plaintiffs recover no more than the harm incurred.

### b.  Eastgate/Great West Offsetting on Remaining Award

Finally, Defendants argue their remaining award against Eastgate should be offset with Great West's award against Defendants. Defendants point out that both entities are controlled in some way by Arthur Berg and operated as a "single unit" during the transaction. Motion, ECF 379 at 21. Defendants also suggest that they will be unable to recover their award from Eastgate. *Id.* Plaintiffs respond that Eastgate and Great West have different ownership structures, and that Defendants are mislabeling as "offset" what should really be an alter-ego claim or similar action. Response, ECF 386 at 9–10.

This Court agrees with Plaintiffs that Defendants' argument is closer to a veil-piercing analysis but disagrees that addressing this issue would be improper here. Alter ego arguments are appropriate "whenever it appears that the protections provided by the corporate form are being abused." *LFC Mktg. Grp. v. Loomis*, 8 P.3d 841, 845–46 (Nev. 2000). While Defendants may

PAGE 18 – OPINION & ORDER ON POST-TRIAL MOTIONS

have needed to bring a separate collection action if Plaintiffs were not parties, there is no need to do so when, as here, there is a preexisting action and all that remains is to determine liability for the judgment. *See Magliarditi v. TransFirst Grp., Inc.*, 450 P.3d 911, at *2–3 (Nev. 2019) (table op.) (noting alter ego may be either a separate action or a theory of liability).

To pierce the corporate veil, Nevada law requires that (1) the subsidiary is "influenced and governed by the person asserted to be its alter ego"; (2) there is "such unity of interest and ownership that one is inseparable from the other"; and (3) "adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." *Ecklund v. Nev. Wholesale Lumber Co.*, 562 P.2d 479, 479–80 (Nev. 1977); Nev. Rev. Stat. § 78.747(2).

Although Great West and Eastgate have different ownership structures, Mr. Arthur Berg exercised significant control over both, and they have operated as a single entity controlled and governed by Mr. Arthur Berg throughout the relevant time period. *See* Order, ECF 118 at 14–16 (summarizing joint operations by the Berg entities). For several months, the sole attorney of record for both Eastgate and Great West was the in-house counsel for a third Berg entity. *See* Notice of Appearance, ECF 43. And Defendants now allege that Plaintiffs have left Eastgate "insolvent," Motion, ECF 379 at 21, an allegation that Plaintiffs do not attempt to refute. For purposes of enforcement of this judgment, this Court finds that adhering to the fiction of separate entities would promote injustice by effectively rendering Defendants unable to collect on their judgment against Eastgate, *see LFG Mktg.*, 8 P.3d at 905. This Court therefore finds that Eastgate is an alter ego of Great West.

As alter egos, Defendants' judgment against Eastgate is equivalent to a judgment against Great West. The doctrine of setoff allows a defendant to offset sums owing to the plaintiff against sums owing from the plaintiff to the defendant. *See Schettler v. RalRon Cap. Corp.*, 275

P.3d 933, 941 (Nev. 2012). Great West is entitled to a judgment against Defendants and, as set

out above, the net judgment for Defendants on the Eastgate claims is effectively a debt owed by

Great West to Defendants. The Court will therefore set off these awards.

## B.  Plaintiffs' Motion for Judgment as a Matter of Law (ECF 372)

Plaintiffs move for judgment as a matter of law to set aside the jury's unjust enrichment

award in favor of Defendants. ECF 372. The jury awarded damages to Defendants on both their

breach of contract and unjust enrichment claims against Eastgate. Jury Verdict, ECF 316, at 6, 8.

Plaintiffs argue that the jury's verdict, awarding damages on both these claims, is fatally

inconsistent. Motion, ECF 372 at 3 (arguing Defendants cannot recover on an unjust enrichment

claim "where the jury has awarded Defendants breach of contract damages against Eastgate").

Plaintiffs suggest the appropriate remedy would be for this Court to enter judgment as a matter of

law in Eastgate's favor on the unjust enrichment claim under Rule 50(b); in the alternative,

Eastgate moves for a new trial.[7] *Id.* at 2.

Defendants first contend Eastgate waived this argument by failing to move for judgment

as a matter of law under Rule 50(a) on the unjust enrichment claim. Response, ECF 389 at 3–4.

This Court agrees that Eastgate waived this argument, but it was not by failing to move under

Rule 50(a). As Eastgate points out, the tension it identifies in the jury's verdict is the product "of

the jury's findings on the competing breach of contract claims." Reply, ECF 392 at 3. Eastgate

could not reasonably have been expected to file a motion before receiving the jury's verdict.

But Plaintiffs could have made a motion right after receiving the jury's verdict. The jury

returned a general verdict, offering only an ultimate finding on each claim. ECF 317. Plaintiffs

---

[7] The Court construes Plaintiffs' request for "a new trial with regard to Defendants' unjust enrichment claim," Motion, ECF 372 at 7, as a motion under Rule 59(a).

were therefore required to object to potential inconsistencies in the verdict before the jury was released. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1030–36 (9th Cir. 2003); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995). Rather than speculating about what the jury could have meant by their verdict, *compare* Response, ECF 386 at 5–8 (suggesting an "abundance of bases" for the jury's verdict), *with* Reply, ECF 392 at 3–4 (disputing these theories), this Court could have simply asked the jury what they meant. But while Plaintiffs' counsel noted at the time that he did not think the unjust enrichment claim was valid "because the jury found breach of contract between Eastgate Cattle and [D]efendants," Transcript, ECF 358 at 1709:24–1710:3, he did not make a request to the jury to clarify their award, *id.* at 1709:2, 1711:12. Because Plaintiffs did not raise an objection "at the time the verdict was read," *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 806 (9th Cir. 1984), they have waived any objection based on this inconsistency.

Even if this Court were to construe Plaintiffs' objections to the jury instruction on unjust enrichment as preserving this issue, *see* Motion, ECF 372 at 2–3, Plaintiffs have not shown that a new trial is warranted.[8] The Ninth Circuit has held that, while a facially inconsistent verdict that reflects juror confusion may require a new trial, *E.F. Hutton & Co. v. Arnebergh*, 775 F.2d 1061, 1064 (9th Cir. 1985), "there is no duty to reconcile inconsistent general verdicts," *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018); *see also Zhang*, 339 F.3d at 1031 (noting that

---

[8] This Court focuses on Plaintiffs' motion under Rule 59 because the appropriate remedy for a legally irreconcilable jury verdict is a new trial, not judgment as a matter of law. *Alves v. County of Riverside*, 135 F.4th 1161, 1168 n.7 (9th Cir. 2025). Even if this Court were to accept Plaintiffs' argument and find the verdict is legally inconsistent, there is no reason to privilege the jury's verdict on any one claim over their inconsistent verdict on another claim—both verdicts represent the jury's findings.

"inconsistencies between general verdicts" are generally permitted to stand). In any event, the verdicts here are not irreconcilable.

To be sure, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract." *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997) (per curiam). But that express contract must "cover[] the same subject matter" to bar an unjust enrichment claim. *Ewing v. Sargent*, 482 P.2d 819, 823 (Nev. 1971). If "the contract does not govern" the dispute, an unjust enrichment claim is available. *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021). The jury heard evidence that the parties had a variety of complex business dealings, including written and alleged oral agreements, over the course of several years. The jury would have been well within its rights to find that some of Defendants' claimed fees were covered by the written management agreements, while others were not. The verdict is not contrary to the "clear weight of the evidence," nor does it result in a "miscarriage of justice." *See United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). Plaintiffs' motion for a new trial on the unjust enrichment claim is therefore denied.

## C.  Plaintiffs' Motion to Amend the Judgment (ECF 373)

Plaintiffs move to amend the judgment under Rule 59(e) in two respects. ECF 373. First, Great West seeks to restore the full punitive damages award in its favor. *Id.* at 2–4. Second, Plaintiffs seek an award of postjudgment interest and to set the applicable interest rates. *Id.* at 2. This Court denies the motion as to punitive damages, but grants in part the motion as to awards of interest, as set forth below.

### 1.  Punitive Damages

Great West asks that this Court amend the judgment to reflect the jury's full award of $1,000,000 in punitive damages on Great West's fraud claim. ECF 373 at 2. Great West suggests

that the jury's award of nominal damages on the fraud claim reflected the jury's effort to avoid awarding duplicative damages on the breach of contract and fraud claims, and that, for purposes of applying Nevada's statutory cap on punitive damages, the jury's award of $2,546,000 on the breach of contract claim is the appropriate measure of damages to Great West. *Id.* at 3–4.

Great West relies on *S.J. Amoroso Construction Co. v. Lazovich & Lazovich*, where the Nevada Supreme Court allowed a punitive damages award to stand despite the jury awarding no compensatory damages for fraud. 810 P.2d 775, 777–78 (Nev. 1991). But the jury there explained in response to an interrogatory that they awarded no damages because they believed the breach of contract award adequately compensated the plaintiff for fraud. *Id.* at 777. Without the benefit of such an interrogatory, Great West asks this Court to draw the same inference in this case—that the jury awarded nominal damages because they valued the overall harm to Great West at $2,546,000 and sought to avoid awarding duplicate damages.

This Court cannot so infer. Unlike in *S.J. Amoroso*, the jury here did write "$1.00" on the verdict form. ECF 317 at 3. Such an award is typically understood to represent a jury's finding that Great West proved fraud, but did not provide the "required evidentiary basis for determining a reasonably accurate award of damages." *Gramanz v. T-Shirts & Souvenirs, Inc.*, 894 P.2d 342, 347 (Nev. 1995). Great West urges that such an understanding would be unreasonable here in light of the jury's verdict on the breach of contract claim, Motion, ECF 317 at 3, but this Court does not take the same view of the evidence. Great West's fraud claim was based on various misrepresentations that Defendants allegedly made to induce Great West to make a loan, while Great West's breach of contract claim was based on Defendants' failure to make payments on that loan when due. Trial Memorandum, ECF 264 at 2–4. The jury could reasonably have found that Defendants made those false representations, but that all of Great West's damages were

attributable to the failure to make payments. Particularly given that punitive damages are available only on the fraud claim, *see S.J. Amoroso*, 810 P.2d at 777–78 (noting punitive damages are impermissible on a breach of contract claim), this Court must defer to the jury's determination of how compensatory damages are to be allotted between the claims.

### 2.  Interest

The parties' proposed final judgments both provided for an award of prejudgment interest, accruing on all claims from January 24, 2025, to the date of the judgment. Plaintiffs' Proposed Judgment, ECF 324-1 ¶ 9; Defendants' Proposed Judgment, ECF 325 ¶ 17. This Court accordingly entered a judgment providing that "prejudgment interest will accrue on the amounts set forth herein beginning on January 24, 2025, the date of the jury's verdict." Judgment, ECF 328 ¶ 14.

Plaintiffs now move to amend the judgment to award postjudgment interest and to set a rate for both pre- and postjudgment interest. Motion, ECF 373 at 2. Although neither party directly addresses this issue, this Court begins by addressing the law that governs this motion. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77–79 (1938). In a diversity action, "state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." *Am. Tel. & Tel. Co. v. United Comput. Sys.*, 98 F.3d 1206, 1209 (9th Cir. 1996).

Plaintiffs' motion relies only on Nevada law to argue (1) that it is entitled to postjudgment interest, and (2) that the appropriate rate of interest for all claims is 20% per annum, the default rate specified in the contract between Great West and Defendants. ECF 373 at 2. Defendants agree this Court should clarify the accrual of postjudgment interest on all claims, but their response arguing Nevada's statutory rate of interest—rather than the federal postjudgment interest statute—should apply for postjudgment interest on claims other than Great West's contract claim. ECF 397 at 3. And Plaintiffs complicate things further in their reply,

PAGE 24 – OPINION & ORDER ON POST-TRIAL MOTIONS

arguing this Court should also amend the judgment to provide that prejudgment interest began to accrue on June 9, 2022, on the Eastgate claims.[9] ECF 398 at 2–3 (citing Nev. Rev. Stat. § 17.130(2)).

This Court begins by sorting out the award of prejudgment interest under Nevada law. Applying Nevada law, this Court amends the judgment to award prejudgment interest at a rate of 20% on Great West's contract claim and 10% on all other claims, running from the date of the verdict to the date of the judgment. Then, applying federal law to determine an award of postjudgment interest, this Court finds that an award of postjudgment interest is required here and that the parties have not contractually agreed to waive the application of the federal postjudgment interest statute. This Court accordingly awards postjudgment interest at the rate mandated by 28 U.S.C. § 1961, running from the date of entry of judgment.

### a.  Prejudgment Interest

This Court first finds that Plaintiffs' argument for awarding prejudgment interest for any period predating the jury's verdict is waived. First, Plaintiffs expressly disclaimed any intent to seek an award of prejudgment interest in the pretrial order. *See* ECF 280 at 5 n.4. Second, Plaintiffs did not object to an award of prejudgment interest limited to the post-verdict period in Defendants' proposed judgment, nor did they propose a broader period for prejudgment interest in their own proposed judgment. Plaintiffs' Proposed Judgment, ECF 324-1. Third, Plaintiffs did not move to amend the judgment on this basis, but rather first raised this argument in their reply brief, depriving Defendants of an opportunity to respond. *See United States ex rel. Meyer v.*

---

[9] Plaintiffs do not, however, suggest this Court should also amend the judgment to similarly back-date the accrual of prejudgment interest on Great West's contract claims, despite Nevada law providing that prejudgment interest may begin to accrue even earlier on contract claims. Nev. Rev. Stat. § 99.040(1) (providing that prejudgment interest may accrue on contract claims "upon all money from the time it becomes due").

*Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009). Since the applicable period of prejudgment interest has already been decided, this Court only addresses the appropriate rates for prejudgment interest.

In determining the rate of prejudgment interest, this Court considers Defendants' arguments on postjudgment interest, which raise defenses under Nevada law that more appropriately apply to prejudgment interest. Defendants first argue that Plaintiffs waived default interest on the contract with Great West through a contract modification. Response, ECF 397 at 2. This defense is difficult to reconcile with the jury's verdict rejecting Defendants' affirmative defenses of waiver and estoppel, which were premised on the same facts that Defendants invoke here. That the jury's verdict was similar—though $34,000 higher—than a no-interest damages number presented by Plaintiffs' expert does not show conclusively that the jury found that the parties had waived the default rate of interest.

This Court agrees, however, that the 20% default interest rate expressly provided for by the contract between Great West and Defendants should apply only to Great West's breach of contract claim. The contracts between Eastgate and Defendants, by contrast, did not specify any rate of default interest. This Court therefore amends the judgment to award prejudgment interest at the rate of 20% between the date of the jury's verdict and the date of entry of judgment on the Great West breach of contract claim only.

As for Eastgate's breach of contract claim and Defendants' breach of contract and unjust enrichment claims, *see Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 567 F. App'x 527, 528 (9th Cir. 2014) (assuming without deciding that Nevada law allows recovery of prejudgment interest on an unjust enrichment claim), the interest rate on each of these claims is the prime interest rate at the time of judgment, plus two percent, Nev. Rev. Stat. §§ 17.130(2),

PAGE 26 – OPINION & ORDER ON POST-TRIAL MOTIONS

99.040(1). The prime interest rate in Nevada on January 1, 2025, was 8.00%. *See* Fin. Insts. Div., *Prime Interest Rate*, Nev. Dep't of Bus. & Indus. (2025), https://perma.cc/7GNB-2W26. Interest will accrue on these claims at a rate of 10% between the date of the jury's verdict and the date of entry of judgment. Plaintiffs are entitled to recover post-verdict prejudgment interest on punitive damages at the same 10% rate for the same post-verdict, prejudgment time period because the jury "has heard all the evidence" and the amount of damages can be ascertained. *Ramada Inns, Inc. v. Sharp*, 711 P.2d 1, 2 (Nev. 1985); *see Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013) (affirming award of prejudgment interest on punitive damages under similar circumstances).

### b. Postjudgment Interest

Finally, this Court addresses postjudgment interest. Postjudgment interest is governed by federal law, even in diversity cases. *Am. Tel. & Tel. Co.*, 98 F.3d at 1209. Postjudgment interest on a federal district court judgment is mandatory and runs from the date of the judgment until the judgment is satisfied. *Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 518 F.3d 1013, 1017–18 (9th Cir. 2008).

Plaintiffs suggest that, because the contract between the parties provides for a default interest rate of 20%, postjudgment interest should likewise accrue at the rate of 20%. Motion, ECF 373 at 2. But "federal law determines the rate of post judgment interest," *Lagstein*, 725 F.3d at 1055, and the parties may only contractually agree otherwise through a "specific agreement" "on this specific issue." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004); *cf. Citicorp Real Est. v. Smith*, 155 F.3d 1097, 1108 (9th Cir. 1998) (finding this requirement met where the contract specified an interest rate "after judgment until collection"). The contractual provision only defines an interest rate applicable on "the outstanding Principal balance," *see* Promissory Note, ECF 340-13 § 5(B), and does not "even allude to post-judgment

interest," *Oreo Corp. v. Winnerman*, 642 F. App'x 751, 755 (9th Cir. 2016). The contract therefore does not waive 28 U.S.C. § 1961.

The Court will amend the judgment to provide for postjudgment interest on the entire amount of the judgment, compounded annually, at the rate specified by 28 U.S.C. § 1961(a).

## CONCLUSION

Defendants' Motion for Judgment as a Matter of Law, ECF 379, is GRANTED IN PART. This Court reduces the award of punitive damages to $150,000 on each of the two fraud claims to comply with constitutional limits on punitive damages award. The Court also offsets: (1) the award to Eastgate against Defendants on the breach of contract claim with the award to Great West against Defendants on the breach of contract claim, and (2) the award to Great West against Defendants with the award to Defendants against Eastgate. Plaintiffs' Motion for Judgment as a Matter of Law, ECF 372, is DENIED. Plaintiffs' Motion to Amend the Judgment, ECF 373, is GRANTED IN PART. This Court awards prejudgment interest on Great West's breach of contract claim at the contractual rate of 20% and on all other claims at the statutory rate of 10%. This prejudgment interest will run from the date of the jury's verdict to the date of entry of judgment. Postjudgment interest accrues on all claims at the federal statutory rate.


**IT IS SO ORDERED.**

DATED this 27th day of August, 2025.


/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge