IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREAT WEST CAPITAL, LLC**, a Delaware limited liability company, | Case No. 3:22-cv-00768-IM |
| Plaintiff, | **OPINION AND ORDER ON MOTIONS FOR ATTORNEY'S FEES AND COSTS** |
| v. | |
| **JACK PAYNE**, an individual; **JUNIPER MOUNTAIN CATTLE, LLC**, a Nevada limited liability company; and **NEVADA LIVESTOCK MARKETING, LLC**, a Nevada limited liability company, | |
| Defendants. | |
| **EASTGATE CATTLE CO. LLC**, a Delaware limited liability company; and **ARTHUR H. BERG**, an individual, | |
| Counterclaim-Defendants. | |

Jonathan M. Radmacher & J. Kurt Kraemer, McEwen Gisvold LLP, 1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204; and Roy B. Thompson & Amy M. Bogràn, Thompson Bogràn, PC, 5 Centerpointe Drive, Suite 400A, Lake Oswego, OR 97035. Attorneys for Plaintiff and Counterclaim-Defendants.

Erick J. Haynie, Timberline Law Group, 7128 SW Gonzaga Street, Suite 100, Portland, OR 97223; Renée E. Rothauge, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; and Tonya Van Walleghem, P.O. Box 1933, Lake Oswego, OR 97035. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Now before the Court are a motion for attorney's fees, ECF 329, filed by Plaintiff Great West Capital and Counterclaim-Defendants Eastgate Cattle Co. and Arthur H. Berg (collectively "Plaintiffs"), and a motion for attorney's fees, ECF 339, and a bill of costs, ECF 338, filed by Defendants Jack Payne, Juniper Mountain Cattle, and Nevada Livestock Marketing. For the reasons below, this Court grants in part both motions. This Court will award attorney's fees and costs to Plaintiffs in the amount of $926,099.73 and to Defendant Rachel Payne in the amount of $70,502.35.

## BACKGROUND

Plaintiff Great West Capital sued Defendants Jack Payne, Juniper Mountain Cattle, and Nevada Livestock Marketing, alleging Defendants had breached their contracts with Plaintiff and committed fraud under Nevada law. ECF 68 ¶¶ 48–84. Defendants brought counterclaims against Plaintiff and Counterclaim-Defendants Eastgate Cattle Co. and Arthur Berg, alleging Eastgate and Berg breached their contracts with Defendants and unjustly enriched themselves, and that Great West, Eastgate, and Berg had committed fraud. ECF 117 ¶¶ 111–152. Eastgate and Berg also asserted counterclaims for breach of contract, fraud, and consumer fraud against Defendants. ECF 128 ¶¶ 95–145. The factual background regarding the claims is described in detail in previous orders on the parties' motions to dismiss and motions for summary judgment. *See* ECF 118, 168, 200.

The case proceeded to trial on January 14, 2025. ECF 298. Both sides moved for judgment as a matter of law under Rule 50(a). ECF 307, 308. This Court granted both motions in part and otherwise reserved ruling on the motions. ECF 310. After a seven-day jury trial, the jury returned a split verdict, finding for Great West on its breach of contract and fraud claims, for Eastgate on its breach of contract and fraud claims, and for Defendants on their breach of

contract and unjust enrichment claims against Eastgate. ECF 317. The jury awarded $3,645,002 in compensatory damages and $1,290,000 in punitive damages to Plaintiffs, and $1,612,000 in compensatory damages to Defendants. *Id.* After the parties submitted competing forms of judgment, ECF 321, 324, 325, this Court entered judgment on February 27, 2025, ECF 328. The judgment largely tracked the jury's verdict, but the Court reduced the punitive damages awarded on Great West's fraud claim to $300,000 to reflect Nevada's statutory cap on punitive damages. *Id.* at 2 n.1.

Anticipating significant post-trial work, including appeals, this Court encouraged the parties to attempt to settle the matter and stayed post-trial deadlines to facilitate a judicial settlement conference with Magistrate Judge Acosta. ECF 359. The case did not settle, and both Plaintiffs and Defendants moved for judgment notwithstanding the verdict, ECF 372, 379, and to amend the judgment under Rule 59(e), ECF 373, 379. This Court granted Defendants' motion to amend the judgment to offset damages awards and Plaintiffs' motion to amend the judgment to provide for interest and ordered the parties to propose a form of judgment consistent with this Court's opinion. Opinion & Order on Post-Trial Motions, ECF 400.

## STANDARDS

Under Nevada law, a "district court is not permitted to award attorney fees or costs unless authorized to do so by a statute, rule or contract." *U.S. Design & Constr. Corp. v. I.B.E.W. Local 357*, 50 P.3d 170, 173 (Nev. 2002). However, "[p]arties are free to provide for attorney fees by express contractual provisions." *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012).

In Nevada, "the method upon which a reasonable fee is determined is subject to the discretion of the court," which "is tempered only by reason and fairness." *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548–49 (Nev. 2005). Nevada law requires courts to consider four factors originally identified in *Brunzell v. Golden Gate National Bank*: (1) the

PAGE 3 – OPINION & ORDER ON ATTORNEY'S FEES

qualities of the advocate, (2) the character of the work done, (3) the work actually performed by the lawyer, and (4) the result. 455 P.2d 31, 33 (Nev. 1969).

"In determining the amount of fees to award, the district court can follow any rational method so long as it applies the *Brunzell* factors." *Smith v. Zilverberg*, 481 P.3d 1222, 1231 (Nev. 2021). One permissible method of calculation is the lodestar approach, which involves multiplying "the number of hours reasonably spent on the case by a reasonable hourly rate." *Shuette*, 124 P.3d at 549 & n.98. "There is a strong presumption that the lodestar rate is reasonable." *Herbst v. Humana Health Ins. of Nev.*, 781 P.2d 762, 764 (Nev. 1989).

## DISCUSSION

This Court begins by identifying the law that governs these motions. Concluding that any fee award in this case is governed by Nevada law, the Court turns to the parties' entitlement to fees and concludes that only Plaintiffs are entitled to fees in this action under the contract. Defendant Rachel Payne is, however, entitled to recover fees under Nevada statute. Addressing the reasonableness of both fee petitions, this Court determines that Plaintiffs are entitled to recover $681,840.46 in attorney's fees and $244,259.27 in costs. Defendant Rachel Payne is entitled to recover $70,118.50 in attorney's fees and $383.85 in costs.

### A. Governing Law

As a preliminary matter, Defendants argue that an Oregon statute, O.R.S. 20.096, ought to govern this Court's determination of an award of attorney's fees in this action. Defendants' Motion for Attorney Fees ("D. Mot."), ECF 339 at 4–5. That statute "requires reciprocity of recovery of attorneys' fees," allowing both parties to a contract "the same right to collect attorney fees despite onesided contractual provisions." *Jewell v. Triple B. Enters.*, 290 Or. 885, 887–88 (1981). Plaintiffs argue that Nevada law, selected by the parties' contract to govern their substantive claims, should also govern the award of attorney's fees. Response in Opposition to

D. Mot. ("Pl. Resp."), ECF 374 at 4. This Court concludes that Nevada law governs any award of attorney's fees.

A federal court exercising supplemental jurisdiction over state law claims applies the forum state's choice-of-law rules. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Although Plaintiffs correctly note that this Court has repeatedly ruled that Nevada law governs the substantive claims in this action, Pl. Resp., ECF 374 at 4, Plaintiff Great West filed this action in the District of Oregon, so Oregon's choice-of-law rules applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).

Under Oregon law, the parties to a contract may choose the law or laws that govern their contractual obligations. O.R.S. 15.350. Under Oregon law, the law that controls the substantive dispute "also controls the issue of attorney's fees, unless doing so would circumvent a fundamental public policy of Oregon law." *Avery v. First Resol. Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009) (citing *Fiedler v. Bowler*, 117 Or. App. 162 (1992)). Oregon courts have recognized that Oregon's prohibition against one-sided attorney's fee provisions serves a "remedial and reciprocal purpose," *Jewell*, 290 Or. at 888, that constitutes a fundamental policy of Oregon, *Capital One Bank v. Fort*, 242 Or. App. 166, 172 (2011). Nevada courts, by contrast, allow for the enforcement of one-sided attorney's fee provisions. *See Rowland v. Lepire*, 662 P.2d 1332, 1336–37 (Nev. 1983).

This Court concludes that applying Nevada law would not frustrate a fundamental policy of Oregon law. The purpose of Oregon's reciprocity provision is to "protect[] Oregon consumers who enter into contracts with sellers of goods and services that give the sellers the unilateral right to an award of prevailing party attorney fees." *Capital One Bank*, 242 Or. App. at 171. The statute "was directed to the inequality of bargaining power which is so common in many

commercial transactions," seeking to "neutralize the position of the parties." *Id.* at 171–72 (quoting *McMillan v. Golden*, 262 Or. 317, 320 (1972)). Oregon courts accordingly do not apply O.R.S. 20.096 when the transaction does not involve consumers with little bargaining power entering contracts for goods or services. *See Fiedler*, 117 Or. App. at 166.

Both Mr. Berg and Mr. Payne are businessmen who entered into contracts designed to govern a complex and multi-year commercial venture. Oregon's policy interest in protecting consumers from one-sided fee agreements does not extend to protecting parties with similar bargaining power exercising their "freedom to choose" a given law. *Fiedler*, 117 Or. App. at 166. Oregon also has little interest in enforcing its policy in a dispute like this one, where the contract was made under Nevada law, the Defendants are all citizens of Nevada, and the events at issue primarily occurred in Nevada. *Cf. Seattle-First Nat'l Bank v. Schriber*, 51 Or. App. 441, 449 (1981) (noting Oregon had "no real interest based upon policy" in a case where no party was an Oregon resident when the contract was made). Defendants do not establish any "clear and overpowering policy reason" that counsels in favor of applying Oregon law here. *Fiedler*, 117 Or. App. at 166.

Defendants also argue in the alternative that applying the one-way attorney fee provision would be unconscionable under Nevada law. D. Mot., ECF 339 at 7 & n.8. As discussed above, Nevada courts routinely award fees under similar provisions, suggesting they are not uniformly unconscionable. *See, e.g.*, *Rowland*, 662 P.2d at 1337; *Trs. of the Carpenters for S. Nev. Health & Welfare Tr. v. Better Bldg. Co.*, 710 P.2d 1379, 1382 (Nev. 1985); *see also Pandelis Constr. Co. v. Jones-Viking Assocs.*, 734 P.2d 1236, 1238 n.3 (Nev. 1987). This Court will therefore enforce the one-sided fee provisions under Nevada law.

**B. Entitlement to Fees**

Having concluded that Nevada law governs any award of attorney's fees in this action, this Court assesses the contracts between the parties. This Court determines that the "waterfall provision" does not create an entitlement to attorney's fees. There is therefore no provision of the contracts that creates any entitlement to fees for Defendants. Rachel Payne is, however, entitled to recover her fees under Nevada's fee-shifting statute. As for Plaintiffs, this Court determines that Great West and Berg, but not Eastgate, are entitled to recover fees related to this litigation under the attorney's fee provisions of the contracts.

**1. Defendants' entitlement to fees**

Defendants contend that the profit-sharing agreements between the parties entitle any party to recover attorney's fees "incurred with respect to the Notes," such that they are entitled to recover all of their attorney's fees. D. Mot., ECF 339 at 5–6. This Court disagrees.

Section 5 of the parties' profit-sharing agreement provides:

> Gross receipts from sale of Cattle shall be distributed in the following order:
> First, and immediately, to repayment of amounts owing under the Notes, payment of reasonable costs for administering the Notes, payment of costs associate with obtaining security for the Notes, and payment of any attorney fees incurred with respect to the Notes and any agreement between or among Eastgate, Jack Payne, Juniper Mountain Cattle, LLC, Nevada Livestock Marketing, LLC, and any other Affiliated Entity. If Payne has any liabilities to Eastgate, or liabilities to the Notes' owner(s) and/or holder(s), including unliquidated, contingent, unmatured, disputed, legal, and equitable liabilities, distributions provided in the following paragraphs to Payne may be withheld or offset by Eastgate on account of those liabilities, and on account of any attorney fees associated with those liabilities.

Open/Bred Profit Sharing Agreement, ECF 340-7, § 5; *see also* Yearling Profit Sharing Agreement, ECF 340-8, § 5 (same).

Nevada courts honor parties' agreements to "provide for attorney fees by express contractual provisions." *Pardee Homes of Nev. v. Wolfram*, 444 P.3d 423, 427 (Nev. 2019). Nevada courts apply traditional rules of contract interpretation to determine whether a contractual provision authorizes an award of attorney's fees. *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012). The waterfall provision does not. By its express terms, it only governs the distribution of "[g]ross receipts from sale of Cattle," mentioning attorney's fees as one possible distribution. It does not provide for the award of such fees, such as by identifying when a party would be entitled to recover attorney's fees or by defining what fees and costs are recoverable.

Defendants argue that the evidence at trial showed $11,291,886 in total cattle sales, more than enough to cover their attorney's fees. D. Mot., ECF 339 at 6 (citing Trial Exhibit 118, ECF 340-15 at 1). Whether or not this is true, it is not relevant to whether the contract authorizes an award of fees. Defendants may bring a separate breach of contract action to enforce the terms of the agreement, but the waterfall provision does not create any entitlement to attorney's fees.

Finally, Defendants suggest that Rachel Payne may be entitled to an award of attorney's fees under Nev. Rev. Stat. 18.010(2)(b), which authorizes an award of attorney's fees when a claim "was brought or maintained without reasonable ground or to harass" the other party. Defendants argue that "Mrs. Payne should never have been named as a party," D. Mot., ECF 339 at 3, and suggest that she was named to "frustrate and harass the Paynes," *id.* at 8.

A claim is groundless "if there is no credible evidence to support it." *Capanna v. Orth*, 432 P.3d 726, 734 (Nev. 2018). To award fees under this provision, "there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party." *Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 687 (Nev. 1995). While the fact that a claim was not meritorious "alone is insufficient for a determination

that the motion was frivolous, warranting sanctions," *Rivero v. Rivero*, 216 P.3d 213, 234 (Nev. 2009), this Court's order dismissing Mrs. Payne noted that Great West had failed to allege any specific acts committed by Mrs. Payne, despite "ample opportunity to amend the pleadings." Order, ECF 113 at 9–10. This Court finds that the claims against Mrs. Payne were groundless and that, having secured the dismissal with prejudice of those claims, Mrs. Payne is a prevailing party. *See MB Am., Inc. v. Alaska Pac. Leasing Co.*, 367 P.3d 1286, 1292 (Nev. 2016). She may therefore recover her fees under Nev. Rev. Stat. 18.010(2)(b).

### 2. Plaintiffs' entitlement to fees

This Court finds that Plaintiff Great West Capital and Counterclaim-Defendant Arthur Berg are entitled to an award of fees under the parties' contracts. The Consolidated Loan Agreement provides that Great West may recover "all of [its] costs and expenses incurred in connection with the enforcement of the Loan or incurred for preservation or defense of [its] rights under the Loan," defined to include "attorneys' fees and legal expenses," "all court costs, fees for necessary witnesses, travel expenses," and costs of "in-house accounting and legal staff." ECF 340-16, § 11. The agreement specifies that fees of in-house counsel "shall be based on the market rate for such in-house services and not the actual amount paid for such services." *Id.* The Consolidated Note issued by Great West contains essentially identical language, ECF 340-13, § 23, as do the profit-sharing agreements with Eastgate, Open/Bred Profit-Sharing Agreement, ECF 340-7, § 6; Yearling Profit-Sharing Agreement, ECF 340-8, § 6. Each of these provisions expressly authorize an award of attorney's fees. *Davis*, 278 P.3d at 515.

The parties dispute whether the Plaintiffs are prevailing parties on their breach of contract claims. *Compare* Memorandum in Support of Plaintiffs' Motion for Attorney's Fees ("Pl. Mot."), ECF 330 at 3 (arguing they are), *with* Response and Objection to Pl. Mot. ("D. Resp."), ECF 376 at 2 (arguing Eastgate and Berg did not prevail). As a preliminary matter, this Court

notes that the one-sided fee provisions do not, by their text, require Great West or Eastgate to prevail to be entitled to an award of attorney's fees. Nevada law likewise does not appear to limit the recovery of attorney's fees under a contract to a prevailing party. *See Cheyenne LV Cap., LLC v. A10 Cap., LLC*, No. 21-cv-1270, 2022 WL 2873171, at \*2 (S.D. Cal. July 21, 2022) (noting that, under Nevada law, a party "can still arguably move for contractual fees even though [it] is not technically" a prevailing party). *But see* Nev. Rev. Stat. 18.010(4) (providing that Nevada's fee statute does not apply to an action arising out of a contract that "entitles the prevailing party to an award of reasonable attorney's fees"). Nonetheless, a party who does not prevail would likely not be entitled to any significant fee; at a minimum, even if entitled to some fee award, the fourth *Brunzell* factor would weigh heavily against any substantial award. *See Brunzell*, 455 P.2d at 33 (directing courts to consider "whether the attorney was successful"). This Court will therefore assess whether Great West, Eastgate, or Arthur Berg are prevailing parties in this action.

Under Nevada law, a party prevails "if it succeeds on any significant issue in litigation which achieves some of the benefit it sought in bringing suit." *Valley Elec. Ass'n v. Overfield*, 106 P.3d 1198, 1200 (Nev. 2005). Great West prevailed against Defendants in this litigation. Great West won a substantial verdict on its breach of contract and fraud claims, while successfully defending against all counterclaims asserted against it. It is therefore entitled to recover attorney's fees under the Consolidated Loan Agreement and the Consolidated Note.

Eastgate argues that it too should be considered a prevailing party, pointing to the claims decided in its favor. Pl. Mot., ECF 330 at 3. Eastgate contends that unjust enrichment is a non-contractual matter, so Eastgate may still be considered a prevailing party under the contract, even if not prevailing overall. *See id.*

When multiple parties succeed on claims against each other, Nevada law requires that the court "offset all awards of monetary damages to determine which side is the prevailing party." *Parodi v. Budetti*, 984 P.2d 172, 175 (Nev. 1999). Applying this standard requires a court to consider the claims "as a whole" to determine "the total net award." *Id.*; *see N. Nev. Homes, LLC v. GL Constr., Inc.*, 422 P.3d 1234, 1237 (Nev. 2018) (directing courts to consider all "judgments for monetary damages"). Eastgate cites no Nevada authority suggesting this analysis should be limited to fee-bearing claims. Although Defendants cannot recover fees under the contract, they received a greater net damages award against Eastgate and are therefore the prevailing party on the Eastgate claims.

Finally, Arthur Berg is a prevailing party entitled to recover fees with respect to Defendant's fraud claim, the only claim brought against him individually. *See MB Am.*, 367 P.3d at 1292. Arthur Berg is not a party to any of the Great West or Eastgate contracts and does not seek an award of fees by statute or rule, which would ordinarily foreclose him from recovering any fees. However, since it was clear from the testimony at trial that Arthur Berg controls Great West, this Court provides for one lump sum to include amounts due to Arthur Berg and Great West collectively.

## C. Amount of Fees

This Court calculates awards of fees to each of the parties entitled to recover fees below. First, this Court analyzes Rachel Payne's fees and concludes she is entitled to recover $70,118.50 in fees and $383.85 in costs. Next, this Court addresses Plaintiffs' fees and determines Great West and Arthur Berg are entitled to recover $681,840.46 in attorney's fees and $244,259.27 in costs.

### 1. Rachel Payne

Rachel Payne requests $150,374.50 in fees and $3,657.44 in costs. D. Mot., ECF 339 at 9–10. She explains that this amount reflects 50% of Defendants' fees and costs from the filing of the Complaint through the date this Court dismissed the claims against her with prejudice. *Id.* Plaintiffs do not object to any specific fees or costs, but contend that 50% is an unreasonable percentage. Pl. Resp., ECF 374 at 8. They point out that Rachel Payne was not named as a defendant in the initial Complaint filed in May 2022, which identifies her as the manager of two of the Defendants but does not assert any claims against her. ECF 1 ¶¶ 3, 23. Instead, Mrs. Payne was first named as a defendant in the First Amended Complaint, filed in April 2023. ECF 68 ¶¶ 50, 56. Plaintiffs also argue that the fees related specifically to the claims against Rachel Payne should reflect a "minimal amount of work," pointing out that only a few pages of Defendants' first Motion to Dismiss, ECF 77, related specifically to the claims against Rachel Payne. Pl. Resp., ECF 374 at 8.

Plaintiffs' first point is correct and warrants a reduction in the fee award to Mrs. Payne. Nev. Rev. Stat. § 18.010(2)(b) provides only for the recovery of fees by a "prevailing party." While this term encompasses "plaintiffs, counterclaimants and defendants," *Smith v. Crown Fin. Servs. of Am.*, 890 P.2d 769, 773 (Nev. 1995), it requires that there be some "claim, counterclaim, cross-claim or third-party complaint or defense," § 18.010(2)(b). Mrs. Payne may only recover fees for the time period in which there were claims against her in this action. *Cf., e.g., W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 928 (9th Cir. 2012) (collecting cases denying fees for pre-litigation administrative proceedings).

On Plaintiffs' second point, however, this Court does not find that Mrs. Payne is entitled to recover only fees related to specific portions of the briefing that mentioned her. While the Motion to Dismiss did include a section arguing that Great West failed to state a claim against

PAGE 12 – OPINION & ORDER ON ATTORNEY'S FEES

Mrs. Payne, ECF 77 at 3–5, the First Amended Complaint named her as a defendant on each of the claims brought by Great West, either by name, as one of the "Payne Defendants," or as "Defendants," ECF 68 ¶ 50, 56, 66, 70, 77, 83. That Complaint also argued she was personally liable as an alter ego of Nevada Livestock Marketing and Juniper Mountain Cattle, *id.* ¶ 8, and sought to impose joint and several liability, *id.* ¶¶ 53, 59, 68. Mrs. Payne's interest in this litigation is therefore fairly reflected by an award of 50% of the attorney's fees for the time she was named as a party to this action.

Between April 12, 2023, and November 8, 2023, timekeepers for Perkins Coie billed $70,542 in this action. Declaration of Erick J. Haynie, ECF 340-19, Ex. 19 at 8–15. Tonya Van Walleghem billed an additional $69,695. *Id.*, ECF 340-21, Ex. 21 at 14–26. Mrs. Payne is entitled to recover half of this amount as her attorney's fees, or $70,118.50. This Court has reviewed the records Defendants submitted in support of their Motion and finds that this amount is reasonable in light of the factors enumerated in *Brunzell v. Golden Gate National Bank*. The only costs incurred during this period appear to be the subpoena on First Commerce LLC, service of process fees for a pair of subpoenas, and a delivery charge. Bill of Costs, ECF 338, Items 2.3–2.6. Mrs. Payne is entitled to recover half of these costs, or $383.85. Her total award of fees and costs amounts to $70,502.35.

### 2. Plaintiffs

Plaintiffs seek an award of $1,722,760.11 in attorney's and expert fees and $80,256.18 in costs.[1] Motion, ECF 329 at 2. Defendants challenge several aspects of Plaintiffs' fee petition, contending that the fee award should not exceed $250,000. D. Resp., ECF 376 at 1.

---

[1] The memorandum in support of this motion identifies slightly higher totals for the proposed awards of fees and costs. ECF 330 at 12 (requesting $1,728,195 in fees and $83,731 in costs). The Court was unable to identify the reason for this discrepancy. *See* Local Rule 7-1(c).

### a. Lodestar calculation

"In determining the amount of fees to award," Nevada law permits a court to follow "any rational method so long as it applies the *Brunzell* factors." *Smith v. Zilverberg*, 481 P.3d 1222, 1231 (Nev. 2021); *see Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that state substantive law applies in determining the proper method of calculating a fee award). Plaintiffs propose that fees should be determined by the lodestar method, which "involves multiplying the number of hours reasonably spent on the case by a reasonable hourly rate." *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549 n.98 (Nev. 2005). Plaintiffs have submitted billing records in support of their fee request. *See O'Connell v. Wynn Las Vegas, LLC*, 429 P.3d 664, 670–71 (Nev. App. 2018) (acknowledging that considering billing records and hourly statements may contribute to a reasonable method). Those records show that Plaintiffs collectively billed 4,086.4 hours on this matter. Motion, ECF 329 at 2.

As support for their requested amount of fees, Plaintiffs provided declarations from each of the law firms they have retained at various stages of this litigation. *See* Declaration of Jonathan Radmacher, ECF 331; Declaration of Matthew Levin, ECF 332; Declaration of Pilar French, ECF 333; Declaration of Jason Ayres, ECF 334; Declaration of Roy Thompson, ECF 335; Declaration of Richard White, ECF 336. Each declaration attests to the rates billed by the attorneys and paralegals working on this case and the background and credentials of those attorneys. Plaintiffs' memorandum in support of their motion argues that these rates are within the reasonable comparable rates of the Portland legal community. Pl. Mot., ECF 330 at 5–8 & Ex. A. Most of the declarations contain similar comparative fee documentation. The Court summarizes these declarations in this chart:

| Attorney | Hourly Rate | Total Hours | Billed Amount[2] |
|---|---|---|---|
| Matthew Levin (Markowitz) | $735 | 12.4 | $6,953.00 |
| April Stone (Markowitz) | $350 | 13.3 | $3,551.00 |
| Vivek Kothari (Markowitz) | $450 | 0.4 | $137.50 |
| Pilar French (Lane Powell) | $540 | 167.3 | $92,542 |
| Andrew Geppert (Lane Powell) | $395 | 154.9 | $61,290.50 |
| Diana Barker (paralegal, Lane Powell) | $215 | 21.1 | $4,536.50 |
| Richard White (First Commerce) | $400 | 298.7 | $119,480 |
| Jonathan Sikes (First Commerce) | $400 | 79.7 | $31,880 |
| Tara Schleicher (Foster Garvey) | $525–$565 | 48.7 | $24,055.50 |
| Jason Ayres (Foster Garvey) | $505–$545 | 101.3 | $46,742 |
| Maggie Sholian (Foster Garvey) | $390–$420 | 112.1 | $37,078.03 |
| Justice Brooks (Foster Garvey) | $390 | 0.1 | $39 |
| Trask Russill (paralegal, Foster Garvey) | $275 | 67.3 | $18,507.50 |
| Kesarah Rhine (paralegal, Foster Garvey) | $240–$260 | 28.5 | $6,382 |
| Roy Thompson (Thompson Bográn) | $585 | 625.8 | $366,093 |
| Amy Bográn (Thompson Bográn) | $520 | 189 | $98,280 |
| Michael Banks (senior law clerk, TB) | $250 | 555.90 | $126,150 |
| Emily Joubert (law clerk, TB) | $250 | 0[3] | $0 |
| Lynn Whitcomb (office assistant, TB) | $90 | 123 | $11,070 |

---

[2] "Billed Amount" refers to the actual amount each timekeeper billed, after any discounts.

[3] All of the 624.20 hours billed by Emily Joubert were discounted by Thompson Bográn.

| | | | |
|---|---|---|---|
| Jonathan Radmacher (McEwen Gisvold) | $480–$510 | 776.7 | $380,031 |
| J. Kurt Kraemer (McEwen Gisvold) | $470 | 13.6 | $6,392 |
| Jason Bowman (McEwen Gisvold) | $260 | 42.8 | $10,868 |
| Russell Brown (legal assistant, MG) | $200 | 0.3 | $60 |
| Cydney Dubrall (legal assistant, MG) | $200 | 29.3 | $5,860 |
| **TOTAL** | | 3,462.2 | $1,457,978.53 |

Defendants do not challenge the hourly rates sought by any of Plaintiffs' attorneys, but raise challenges to the hours billed for (i) the Packers & Stockyards Act claim initially added in an Amended Complaint filed by the law firm Lane Powell, (ii) certain jurisdictional defenses asserted primarily by Plaintiffs' in-house counsel, (iii) the law firm Foster Garvey's role in investigating the "Payne Family Trust" and delaying discovery, (iv) excessive discovery and clerical tasks billed by Thompson Bográn, (v) fees primarily incurred by Thompson & Bográn and McEwen Gisvold in connection with Leslie Busboom's testimony and law enforcement meetings, and (vi) redacted time entries from McEwen Gisvold. This Court considers those challenges in turn below.

### i. Packers & Stockyards Act claim

Defendants contend that this Court should strike all fees associated with Lane Powell, as well as $14,844.54 in fees from Foster Garvey, as a result of Lane Powell's decision to add a claim under the Packers & Stockyards Act ("P&S Act"). D. Resp., ECF 376 at 3. After moving for leave to file an amended complaint asserting a P&S Act claim, ECF 28, Lane Powell withdrew as counsel in March 2023, ECF 42, and entered an attorney's lien for $157,447.12 in July 2023, ECF 99. This Court ultimately granted Defendants' motion to dismiss the P&S Act

claim because the claim "failed to allege anticompetitive harm," which this Court concluded was a required element of a claim under that statute. Order, ECF 113 at 6–7.

Plaintiffs have since filed an action against Lane Powell in Oregon court, bringing claims of breach of contract and professional negligence based on their performance in this action. Complaint, ECF 377-9. Plaintiffs allege that the addition of the P&S Act claim was "aimed at inflating legal fees through unnecessary analysis and additional future legal work." *Id.* ¶ 5. Plaintiffs also allege that the fees charged in this action were "clearly excessive and improper," *id.* ¶ 13, and seek a judgment exceeding $50,000 on each of their three claims, *id.* at 6.

Plaintiffs' position in the malpractice action that the fees charged by Lane Powell were "clearly excessive and improper" is clearly inconsistent with their position in this action that those fees "were reasonably and necessarily incurred." Reply, ECF 384 at 6. These inconsistent positions create a significant risk of double recovery: Plaintiffs could win a judgment in the state court action effectively requiring Lane Powell to refund its fees as excessive and improper, while also winning a judgment in this action requiring Defendants to pay the same fees as reasonable and necessary, an unfair result for Defendants. An award of fees in this action could also have a preclusive effect in the state court proceeding. *See Wyly v. Weiss*, 697 F.3d 131, 141–44 (2d Cir. 2012). The limited briefing on this motion means that it is not the proper forum to resolve the fee dispute between Plaintiffs and Lane Powell, which is better addressed through the pending litigation between those parties. This Court will decline to award the Lane Powell fees.

This Court will not, however, strike the portion of the Foster Garvey fees related to the P&S Act claim. While Defendants point out that Plaintiffs now describe the claim as "lack[ing] factual support" and "inapplicable," Complaint, ECF 377-9 ¶ 5, Plaintiffs' objections to Lane Powell's billing appear to go well beyond the merits of any particular claim, and Plaintiffs do not

appear to have any objections to Foster Garvey's performance. The P&S Act is notoriously vague, *see Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 365 (5th Cir. 2009) (Jones, J., concurring) (noting the P&S Act "resists any attempt to discern its plain meaning"), and Foster Garvey, having entered the action with the First Amended Complaint already written and filed, mounted a reasonable defense. This Court will not dock the Foster Garvey fees for defending this claim and emphasizes that its ruling on these fees reflects the ongoing litigation between Plaintiffs and Lane Powell, without expressing any views on the merits of the P&S Act claim or on the merits of that litigation beyond those in this Court's Order on the motion to dismiss.

### ii. Baseless jurisdictional defenses and in-house counsel's role

Defendants next contend that the fees of Richard White, in-house counsel for a Berg entity, should be reduced to account for a motion to dismiss filed by Eastgate Cattle Co. and Arthur Berg. D. Resp., ECF 376 at 2–3. That motion argued that this Court lacked personal jurisdiction over Eastgate and Mr. Berg and subject-matter jurisdiction over the claims against them. ECF 75 at 3–15. Defendants point out that, among other evidence, Mr. Berg had sworn in 2019 that his West Linn home was his primary residence, Deed of Trust, ECF 85-16, Ex. 15 § 6, undermining his assertion that he was "at all relevant times" a Nevada resident, Declaration of Arthur H. Berg, ECF 34 ¶ 2, 4. This Court agrees some reduction is warranted and, having already declined to award the Lane Powell fees above, will reduce Mr. Sikes's fee award by $5,240 and Mr. White's fee award by $6,240. *See* Declaration of Tonya Van Walleghem, ECF 377-8, Ex. 8 at 3 (identifying and distinguishing Lane Powell and in-house counsel fees related to this motion). Although Plaintiffs contend that most of the fees identified in this document were not related to the motion to dismiss, Reply, ECF 384 at 5, this Court has reviewed the fee entries identified in Defendants' declaration and find that they reflect a reasonable effort to isolate fees associated with these arguments.

Defendants also argue that in-house counsel fees are unreasonable and should be reduced by at least 50%. D. Resp., ECF 376 at 4–5. Defendants argue that in-house counsel multiplied the fees in this action, pointing out that in-house counsel signed the complaint bringing the P&S Act claim discussed above in connection with the Lane Powell fees, as well as the motion to dismiss for lack of jurisdiction at issue in the preceding paragraph. *Id.* Defendants contend that in-house counsel fees are generally unreasonable and that in-house counsel's efforts facilitated unreasonable arguments that would otherwise not have been advanced. *Id.* at 5.

The settlement provides for the recovery of the fees of "in-house legal staff." ECF 340-16, § 11. Generally, fees for in-house counsel are recoverable when in-house counsel is performing active litigation work, but not when performing duplicative work or serving as a client liaison. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F.2d 553, 558 (9th Cir. 1985) (citing *B-E-C-K Constructors v. State, Dep't of Hwys.*, 604 P.2d 578, 585 (Alaska 1979)). Given that there is little Nevada law identifying when, if ever, an in-house counsel may recover fees, an issue that has occasionally divided courts, *see id.* (collecting cases), this Court interprets the explicit reference to in-house counsel fees in the parties' agreement as intended to adopt the *Milgard Tempering* standard that prevails in the Ninth Circuit.

Even when Plaintiffs were represented by outside counsel, their in-house counsel participated in the litigation in "a role similar to that of an associate." White Decl., ECF 336 ¶ 10. In-house counsel notably assumed significant responsibility for discovery. *Id.* ¶ 13; *see United States v. Columbia Pictures Indus.*, 666 F.2d 364, 366, 372 (9th Cir. 1982) (explaining that fees for document review and production are recoverable, even when performed by in-house counsel). Many of the fee entries identified for in-house counsel represent actual litigation tasks that would otherwise have been performed by outside counsel. *See, e.g.*, Statement of Attorneys'

Fees, ECF 336-1, Ex. 1 at 2 (billing for drafting briefs); *id.* at 4 (billing for reviewing document production); *id.* at 5 (billing for defending a deposition); *id.* at 6 (billing for second-chairing trial). These fees are generally compensable. *Scott Paper Co. v. Moore Bus. Forms, Inc.*, 604 F. Supp. 835, 837 (D. Del. 1984) (awarding in-house counsel's fees for attending depositions, preparing witnesses, writing briefs, and participating in trial).

Other time entries, however, reflect less litigation-focused tasks. There are pervasive entries billing for conferences about litigation strategy, *see, e.g.*, Statement of Attorneys' Fees, ECF 336-1, Ex. 1 at 1 (twelve strategy-related entries), and reviewing outside counsel's work, *see, e.g.*, *id.* (billing for review of discovery requests). "Those are typical in-house counsel tasks: acting as the point person for client communication, supervising outside counsel and revising their work, and making strategic decisions." *Planned Parenthood Fed'n of Am., Inc. v. Center for Med. Progress*, No. 16-cv-00236, 2020 WL 7626410, at *5 (N.D. Cal. Dec. 22, 2020), *aff'd*, No. 21-15124, 2024 WL 4471745 (9th Cir. Oct. 11, 2024).

This Court will not conduct an individual review of each fee entry. In broad strokes, however, this Court notes in-house counsel took on a substantial role in this litigation, both during the period between Lane Powell and Foster Garvey and in the runup to trial, during which in-house counsel served as a core part of the trial team. This Court therefore determines that Defendants' proposed 50% reduction likely overstates the proportion of time allocated to typical in-house counsel tasks. This Court will instead reduce in-house counsel's fees by 25% to capture only the time they performed active litigation tasks.

### iii. Investigating the Payne Family Trust and delaying discovery

Defendants contend that fees associated with the law firm Foster Garvey should be reduced by 5% to reflect discovery into the "Payne Family Trust." D. Resp., ECF 376 at 6. Plaintiffs filed a motion to compel production of information about this trust, ECF 46 at 6–7.

PAGE 20 – OPINION & ORDER ON ATTORNEY'S FEES

Defendants said there was no such trust, and that, after five days of diligent searching through Defendants' records and files, they could confirm there was no such trust. Memorandum in Opposition, ECF 58 at 4. This Court denied the motion to compel based on the trust's apparent nonexistence. Order, ECF 106 at 5.

This Court agrees some reduction is warranted on this point but will not reduce Foster Garvey's fees. The motion to compel was signed by Mr. White, ECF 46 at 13, and Defendants' response was filed in March 2023, ECF 58, before Foster Garvey entered the case in July, *see* ECF 95. While the motion was not decided until October, after Foster Garvey noticed an appearance, they cannot be held responsible for this motion to compel. This Court will instead account for this discovery issue by applying the proposed 5% reduction to Mr. White's and Mr. Sikes' fees, for a total reduction of 30% when combined with the reduction described above.

Defendants also argue that some Foster Garvey fees should be struck for delaying discovery or opposing motions to compel that this Court granted. D. Resp., ECF 376 at 6. Defendants point out that they served requests for production on Eastgate in March 2023, but did not receive any responsive documents until March 2024, and even then not in native format or in an organized fashion. *Id.* Plaintiffs respond that discovery disputes in this action were reciprocal and "par for the course." Reply, ECF 384 at 8. This Court agrees that disputes about the appropriate scope of discovery are commonplace, but Plaintiffs conceded that many of the documents at issue in the motions to compel were reasonably sought, making fees incurred in relation to them unreasonable. *See* Order Granting Motion to Compel, ECF 194 at 7 ("Respondents agree to produce these documents . . . ."); *id.* at 8 ("Respondents apparently concede the relevance of the documents and they provide no basis to refuse the discovery requested."); *id.* at 9 ("Respondents concede that this request is reasonable . . . ."). Plaintiffs also

do not explain why many of these documents were produced in non-native formats, which appears to have substantially increased the costs of discovery. *See* Van Walleghem Decl., ECF 377 ¶ 26; Discovery Letter, ECF 377-17, Ex. 17. This Court will award fees to Defendants in connection with the motions to compel and therefore will reduce the fees of Jason Ayres by $7765.17, Tara Schleicher by $682.50, Maggie Sholian by $3,402, and Kesarah Rhine by $524. This Court will also reduce the fees of Roy Thompson by $10,179, Amy Bográn by $312, Michael Banks by $9,075, and Jonathan Radmacher by $672; further adjustments to the Thompson & Bográn and McEwen Gisvold fees are discussed below.

### iv. Excessive discovery and clerical tasks

Defendants argue that the 2,117 hours billed by the Thompson and Bográn firm reflects an excessive amount of work on this case. D. Resp., ECF 376 at 5. Defendants point out that much of this work was on various topics that this Court ultimately excluded from the trial, and suggest that this Court should reduce the total fee request by 50% or more. *Id.*

Plaintiffs respond that Mr. Thompson has discounted 675.5 of his hours, reflecting a "process of trying to winnow out time or effort that might be criticized," and that he has already "reduced his bill (and Plaintiffs' request) accordingly." Reply, ECF 384 at 7. Plaintiffs' Motion seeks $601,593 in fees associated with Thompson & Bográn, based on 2,117.90 hours of work. Motion, ECF 329 at 2. Mr. Thompson's declaration shows that the dollar amount of $601,593 reflects the fees associated with 1,442.40 hours billed, not the 2,117.90 hours of work performed, after Mr. Thompson discounted entirely the hours of one law clerk and reduced the hours of another senior law clerk. *See* Billing Summary, ECF 335-3.

The Thompson & Bográn fees have been discounted based on the timekeeper who incurred the fees, but this Court understands the thrust of Defendants' argument to be that much of Mr. Thompson's and Ms. Bográn's work should also be discounted to reflect this Court's

PAGE 22 – OPINION & ORDER ON ATTORNEY'S FEES

exclusion of much of the evidence related to D.L. Evans Bank, the Paynes' tax returns, and Defendants' PRF insurance. D. Resp., ECF 376 at 5; *see also id.* at 7 (seeking to eliminate fees related to insurance and banking records). That discount, if appropriate, has not been applied; Mr. Thompson's and Ms. Bográn's actual billed fees were not discounted. Billing Summary, ECF 335-3.

Where time records contain entries for hours that are "excessive, redundant, or otherwise unnecessary," the court should exclude these hours or "make across-the-board percentage cuts." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (citations omitted). This Court does not find that a substantial reduction in the Thompson & Bográn fees is warranted based on excessive discovery; at the time Plaintiffs pursued these lines of evidence, they did not know that this Court would ultimately exclude it from consideration by the jury. This Court also notes that this Court excluded the D.L. Evans Bank documents under Rule 403, not Rule 401, acknowledging that they may have some probative value but that this was substantially outweighed by the risk of jury confusion. Pretrial Conference Order, ECF 286 at 8. This Court also allowed in some information from the tax returns and the PRF insurance. *See id.* at 4, 7–8. The Court does not find that discovery into these subjects warrants a reduction in fees, either in the form of a percentage reduction in the Thompson & Bográn fee award or the specific fees related to insurance or banking records identified by Defendants.

This Court does, however, agree with Defendants that the total amount of hours billed verges on excessive. Even post-discounting, the 1,442.4 hours billed by Thompson & Bográn— one of five law firms to work on this case on behalf of Plaintiffs—is substantial. As Defendants point out, it slightly exceeds the number of hours billed by Perkins Coie attorneys over the lifetime of this case. While an opposing party's billing records are not dispositive, they are

relevant to determining a reasonable amount of hours. *See Gonzalez*, 729 F.3d at 1202. In addition to specific issues with the fees, discussed below, this Court will exercise its discretion to reduce the Thompson & Bográn fees by 10%. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (holding that a court may impose a ten-percent reduction based on its exercise of discretion and without specific explanation).

Defendants also argue that the fee request should be discounted by $11,070 to eliminate the fees for Lynn Whitcomb, an office assistant for the firm. D. Resp., ECF 376 at 5. This Court will strike these fees. An attorney's hourly rate reflects the "work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills" their clients. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Work billed by an administrative assistant or office assistant, including "filing, transcript, and document organization time," therefore should be "subsumed in firm overhead." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Neil v. Commissioner*, 495 F. App'x 845, 847 (9th Cir. 2012) (same). These hours were largely billed as either "[o]rganize discovery," Billing Records, ECF 335-2, Ex. 2 at 8, or "[s]preadsheet input," *id.* at 14. These are clerical tasks that should be subsumed in the overhead portion of the attorneys' fees.

Finally, Defendants contend that fees related to the Paynes' tax returns should be struck. Defendants argue that Plaintiffs spent months seeking the Paynes' "signed" tax returns, despite being informed the Paynes filed their tax returns electronically. D. Resp., ECF 376 at 7. Defendants propose striking $30,170.50 related to this discovery. *Id.*

This Court has reviewed the entries identified by Defendants and finds that many of them relate to the Paynes' tax returns in general, and not specifically to Plaintiffs' quest to locate signed copies of those tax returns. While Plaintiffs' pursuit of a signed or "wet-ink" copy was

unreasonable once informed that they Paynes filed their returns electronically,[4] this Court declines to strike the entries associated with the Payne tax returns because they do not appear to be related to work performed specifically to obtain signed tax returns.

### v. Leslie Busboom's testimony and meetings with law enforcement

Defendants raise two fee objections that primarily involve fees incurred by Thompson & Bográn and McEwen Gisvold, as well as Plaintiffs' in-house counsel. D. Resp., ECF 376 at 7–8. These objections relate to third-party witness Leslie Busboom, who appeared briefly at trial, and meetings with Nevada law enforcement. *Id.* at 7.

This Court finds that no reduction is warranted for the fees related to Ms. Busboom. Although Defendants contend her deposition testimony was related primarily to the dismissed P&S Act claim, *id.*, this Court does not find that seeking testimony from Defendants' former accountant was an unreasonable tactic in a trial that turned in part on both parties' financial records, even if her testimony was ultimately not particularly crucial.

The Court does find, however, that Plaintiffs cannot bill for their meetings with Nevada law enforcement. Plaintiffs suggest these meetings were intended to mobilize public resources to find the missing cattle or any third party who had stolen them, Reply, ECF 384 at 9, while Defendants suggest these were an unsuccessful attempt to "convince the [U.S. Attorney] and the [Washoe County District Attorney] to criminally prosecute the Paynes," D. Resp., ECF 376 at 8. Plaintiffs' billing records, which refer to "potential criminal conduct" and a "criminal claim," suggest there is some truth to the latter account. *See* Van Walleghem Decl., ECF 377 ¶ 33 &

---

[4] This Court notes that 93.3% of individual tax returns in the most recent year were filed electronically. *See Returns filed, taxes collected and refunds issued*, Internal Revenue Serv., https://perma.cc/566A-7PVG (archived July 11, 2025). Although Defendants appear to have kept substantial paper records, the Court does not find it implausible that the Paynes were in that 93.3%.

Ex. 22 (collecting fee entries). Even if related, the embryonic criminal matter was not part of this civil matter, so fees related to a potential criminal case must be deducted. This Court will reduce the Thompson & Bográn fees by $9,826 ($700 from Mr. Banks and $9,126 from Mr. Thompson) and Mr. Radmacher's fees by $144.

### vi.  Redacted time entries

Finally, Defendants raise an objection to McEwen Gisvold's fees. This Court finds that this objection does not require any reduction in that firm's fees.

Defendants contend that a handful of partially redacted time entries totaling 2.8 hours do not merit an award of $1,344 in associated fees. D. Resp., ECF 376 at 8. Mr. Radmacher explained that these redactions were intended to preserve the attorney-client or work-product privileges. Radmacher Decl., ECF 331 at 7. A party seeking fees may redact portions of its time entries so long as the redactions "do not impair the ability of the court to judge whether the work was an appropriate basis for fees." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). The Court has reviewed these redacted time entries and finds that they contain sufficient information to allow this Court to identify the time spent and "at least a general idea of what work was being performed," *Randles Films, LLC v. Quantum Releasing, LLC*, No. CV 10-03909, 2012 WL 12884046, at *4 (C.D. Cal. Mar. 30, 2012), *aff'd*, 551 F. App'x 370 (9th Cir. Jan 2, 2014), enabling Defendants and this Court to meaningfully assess the reasonableness of the hours incurred. *Compare Reed*, 388 F.3d at 1286 (permitting recovery for entries such as "Research Supreme Court case law involving [REDACTED]"), *with Shame on You Prods., Inc. v. Banks*, No. CV 14-03512, 2016 WL 5929245, at *16 (C.D. Cal. Aug. 15, 2016) (declining to award fees for entries like "Communications re [REDACTED]" and "Review [REDACTED]"), *aff'd*, 893 F.3d 661 (9th Cir. 2018). The Court finds that these entries are recoverable.

### vii. Conclusion

Based on the above adjustments, this Court finds that $1,109,247.31 is a reasonable lodestar amount based on the hours and rates of Plaintiffs' attorneys, as summarized in the below post-adjustments table.

| Attorney | Hourly Rate | Total Hours | Billed Amount |
|---|---|---|---|
| Matthew Levin (Markowitz) | $735 | 12.4 | $6,953 |
| April Stone (Markowitz) | $350 | 13.3 | $3,551 |
| Vivek Kothari (Markowitz) | $450 | 0.4 | $137.50 |
| Pilar French (Lane Powell) | $540 | 0 | $0 |
| Andrew Geppert (Lane Powell) | $395 | 0 | $0 |
| Diana Barker (paralegal, Lane Powell) | $215 | 0 | $0 |
| Richard White (First Commerce) | $400 | 198.2 | $79,268 |
| Jonathan Sikes (First Commerce) | $400 | 46.6 | $18,648 |
| Tara Schleicher (Foster Garvey) | $525–$565 | 47.4 | $23,373 |
| Jason Ayres (Foster Garvey) | $505–$545 | 84.6 | $38,976.83 |
| Maggie Sholian (Foster Garvey) | $390–$420 | 103.5 | $33,676.03 |
| Justice Brooks (Foster Garvey) | $390 | 0.1 | $39 |
| Trask Russill (paralegal, Foster Garvey) | $275 | 67.3 | $18,507.50 |
| Kesarah Rhine (paralegal, Foster Garvey) | $240–$260 | 26.4 | $5,858 |
| Roy Thompson (Thompson Bográn) | $585 | 533.5 | $312,109.20 |
| Amy Bográn (Thompson Bográn) | $520 | 169.6 | $88,171.20 |
| Michael Banks (senior law clerk, TB) | $250 | 419 | $104,737.50 |
| Emily Joubert (law clerk, TB) | $250 | 0 | $0 |

| Lynn Whitcomb (office assistant, TB) | $90 | 0 | $0 |
|---|---|---|---|
| Jonathan Radmacher (McEwen Gisvold) | $480–$510 | 775 | $379,215 |
| J. Kurt Kraemer (McEwen Gisvold) | $470 | 13.6 | $6,392 |
| Jason Bowman (McEwen Gisvold) | $260 | 42.8 | $10,868 |
| Russell Brown (legal assistant, MG) | $200 | 0.3 | $60 |
| Cydney Dubrall (legal assistant, MG) | $200 | 29.3 | $5,860 |
| **TOTAL** | | 2,583.3 | $1,136,400.76 |

This Court finds that the hours and hourly rates identified above are reasonable. Having reviewed the credentials of each of the billing individuals, the reasonable comparable rates in the Portland legal market, *see* Morones Survey, ECF 333-2; Oregon State Bar 2022 Economic Survey, ECF 333-3, and in light of this Court's own experience, this Court finds the lodestar amount of $1,136,400.76 to be reasonable.

### b. *Brunzell* factors

Under Nevada law, after initially calculating a fee award based on the lodestar method, a court must then consider four factors in determining whether to adjust the award upward or downward: (1) the advocate's professional qualities, (2) the nature of the litigation, (3) the work performed, and (4) the result. *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33 (Nev. 1969).[5] The court has discretion in weighing these factors, though no one element should predominate or

---

[5] Plaintiffs cite to a different set of discretionary factors, the *Johnson–Kerr* factors, as governing the calculation of a reasonable fee in this case. Pl. Mot., ECF 330 at 4–5. But the *Johnson–Kerr* factors only apply when "determining the amount of attorney's fees under federal statutes." *Herbst v. Humana Health Ins. of Nev., Inc.*, 781 P.2d 762, 764 (Nev. 1989). For a claim brought under state law, the four *Brunzell* factors, not the *Johnson–Kerr* factors, govern review of the reasonableness of the attorney's fee. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

be given undue weight. *Id.* This Court finds that the third and fourth *Brunzell* factors require a substantial reduction in the lodestar award, in light of the inefficiencies created by Plaintiffs' repeated changes of counsel and the fact that Eastgate Cattle Co. is not a prevailing party in this litigation. The Court will reduce the lodestar amount by 40%, resulting in an award of $681,840.46.

### i.    Qualities of the advocates

Having reviewed the qualifications and credentials of the billing attorneys and paralegals, this Court finds this factor weighs in favor of the overall reasonableness of the requested amount. Surveying some of Plaintiffs' attorneys, Mr. Radmacher is an experienced trial attorney, *see* Radmacher Decl., ECF 331 ¶ 5, Mr. Thompson and Ms. Bográn have advanced degrees in taxation and specialize in financial litigation, *see* Thompson Decl., ECF 335 at 6, and the attorneys assigned to this case from Foster Garvey are experienced commercial litigators, *see* Ayres Decl., ECF 334 ¶¶ 5–7. This Court finds that their rates billed and hours expended, in light of this Court's adjustments to specific fees in calculating the lodestar amount, are reasonable under the circumstances of this case.

### ii.    Character of the work

This Court finds that the character of the work in this case weighs in favor of a substantial fee award. This case was complex and contentiously litigated, with substantial issues of fact and law raised by both sides. The claims and counterclaims arose out of a multi-year business relationship involving multiple contracts and parties, with each side seeking millions of dollars from the other. The demanding work involved in this case suggests the lodestar fee is appropriate.

### iii. The work actually performed

This case involved several discovery disputes, multiple motions for summary judgment, and three years of work, culminating in an eight-day jury trial involving substantial lay and expert testimony from both sides. While not successful on every claim, Plaintiffs' attorneys produced generally reasonable and competent work. Unreasonable fees associated with particular motions have been excised above in the lodestar calculation.

Defendants raise two arguments that may justify a general reduction of the fee based on the work actually performed. First, they argue that Plaintiffs' frequent changes of counsel necessarily caused duplication of work, multiplying fees and delaying the case. D. Resp., ECF 376 at 3–4. Defendants suggest that a flat 15% reduction would be appropriate to reflect the inefficiencies created by changes of counsel. *Id.* at 4. Plaintiffs contend that the billing statements of counsel do not reflect any duplication of effort. Reply, ECF 384 at 6–7. This Court agrees with Defendants and will reduce the lodestar fee by 15% to reflect substitutions of counsel.

A party's decision to repeatedly substitute counsel will inherently create "a certain amount of wasted effort by withdrawing counsel, along with time expended by substituted counsel in an effort to become familiar with the case, or learn what withdrawing counsel already knew." *Beamon v. City of Ridgeland*, 666 F. Supp. 937, 942 (S.D. Miss. 1987). In this case, Plaintiffs appear to have changed counsel in each instance based on dissatisfaction with the representation: Plaintiffs moved on from Markowitz Herbold because of "a sabbatical taken by a key Markowitz attorney," from Lane Powell presumably based on the fee dispute described above, and from Foster Garvey because Plaintiffs were "continuing to look for counsel to more aggressively move the case to the merits." Pl. Mot., ECF 330 at 5–7. These changes were "self-inflicted expenditure[s]" that Defendants cannot reasonably be expected to pay for. *Beamon*, 666

F. Supp. at 942. Although this Court agrees with Plaintiffs that Defendants have not identified time entries attributable to duplication of effort, "time which is wasted by virtue of a substitute is not necessarily reflected directly by the attorney's time sheets." *Id.* at 942 n.2. This Court finds that Defendants' proposed 15% reduction is reasonable to account for the additional costs generated by Plaintiffs' multiple changes of counsel.

Second, Defendants argue that Plaintiffs' failure to engage in meaningful settlement discussions over the course of the litigation weighs in favor of a reduction in fees. D. Resp., ECF 376 at 8–9. This Court finds that no reduction is warranted on this point. While this Court will always encourage litigants to engage in meaningful settlement negotiations over the course of the litigation, it is difficult to reduce Plaintiffs' fees based on their failure to engage in settlement negotiations when they did engage in mediation, and their ultimate recovery at trial was much larger than any offer from either Defendants or the mediator's proposals. *See* Haynie Decl., ECF 340 ¶¶ 12–15 (describing settlement offers and mediation).

### iv. The result

Finally, as explained above, Plaintiffs Great West and Arthur Berg are entitled to attorney's fees by virtue of being prevailing parties in this action. Plaintiff Eastgate Cattle Co., however, is not entitled to any award of fees because it is not a prevailing party. Plaintiffs' fees must therefore be reduced so that they may recover fees only on the Great West claims, not the Eastgate claims. Because Plaintiffs' billing records cannot be neatly allocated between those parties, Defendants suggest that a flat 50% reduction would be appropriate. D. Resp., ECF 376 at 2.

"A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). To account for the prevailing party determination, this Court will need to attempt to

apportion the fees between the prevailing and non-prevailing parties. *Cf. Mayfield v. Koroghli*, 184 P.3d 362, 369 (Nev. 2008) (apportioning costs among multiple defendants).

Great West, Eastgate, and Mr. Berg were represented collectively throughout this litigation, and many of the issues in this litigation applied to both the Great West and Eastgate claims. But although this action arose out of a shared commercial relationship between Defendants and all Plaintiffs, Eastgate's claims were based on a distinct set of agreements that governed certain aspects of the cattle programs, which presumably required some additional work. This Court does not find that these claims were so inextricably intertwined that Plaintiffs would have expended substantially the same amount of fees even if Eastgate had never brought its claims in this action. Identifying and separating out the work performed only on the Eastgate claims, however, does not appear possible based on the billing records submitted by Plaintiffs. Keeping in mind that the purpose of an attorney's fees award "is to do rough justice, not to achieve auditing perfection," *Fox v. Vice*, 563 U.S. 826, 838 (2011), this Court will reduce the fee award by an additional 25% to reflect Plaintiffs' limited success on the Eastgate claims.

### v.   Conclusion

After weighing the above factors, this Court finds that a 40% reduction in fees is reasonable based on the inefficiencies created by Plaintiffs' repeated changes of counsel and Plaintiffs' lack of success on the Eastgate claim. Plaintiffs' fees are reduced to $681,840.46.

### c.   Introduction of extra-record evidence to jury

Finally, this Court addresses here an issue that does not directly affect the award of fees in this action. Defendants state that, immediately before the exhibit binders were to be sent to the jury, Defendants' paralegal did "one more final check" of the binders and "discovered that Plaintiffs had inserted" into the binders an exhibit this Court had previously excluded as unduly prejudicial. Van Walleghem Decl., ECF 377 ¶ 36. Plaintiffs respond to this argument by

explaining that discovery was necessary to "assess the probative value of things." Reply, ECF 384 at 10. This explanation seems to miss the point—Defendants' objection was not to the discovery, but the potential introduction of an exhibit this Court had previously excluded.

While it may have been inadvertent, this Court finds these allegations extremely troubling. Extra-record evidence that this Court excluded as unfairly prejudicial should not reach the jury under any circumstances. Had the jury received that exhibit, this Court would have to analyze whether the jury's exposure to that evidence required a new trial, *see Est. of Morad v. City of Long Beach*, 807 F. App'x 624, 626–27 (9th Cir. 2020), an analysis this Court would have conducted in light of its prior ruling that this exhibit was prejudicial. Defendants do not seek any award of fees in connection with this incident. D. Resp., ECF 376 at 8. This Court cannot determine who is responsible for the inclusion of that exhibit or whether it was intentional, and thus finds no independent basis to reduce fees. This Court nonetheless cautious Plaintiffs that they should carefully review their exhibit binders in any future litigation to avoid the significant expense of a new trial.

## D. Plaintiffs' Costs

Plaintiffs' motion for attorney's fees, ECF 329, also seeks an award of costs. Plaintiffs seek $261,474.08 in expert fees and an additional $80,256.18 in miscellaneous costs. *Id.* at 2.

A party seeking an award of costs must "file and serve on all parties a Bill of Costs that provides detailed itemization of all claimed costs." Local Rule 54-1(a)(1). Defendants argue Plaintiffs have waived any entitlement to costs by failure to file a separate bill of costs. D. Resp., ECF 376 at 9. This Court agrees in principle, but will exercise its discretion to waive Plaintiffs' failure to file a separate bill of costs.

Federal Rule of Civil Procedure 54(d) and the Local Rules create a procedure by which a party may recover its attorney's fees and costs. *See MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*,

197 F.3d 1276, 1280 (9th Cir. 1999). Plaintiffs have a legal entitlement to costs under their

contract. *See* ECF 340-16, § 11 (providing for the award of "all court costs, fees for necessary

witnesses," and "travel expenses"). Plaintiffs are still required to follow the procedural

requirements of Rule 54 to recover on that entitlement; compliance with that rule under these

circumstances would allow this Court to review one itemized bill of neatly categorized costs,

instead of separately assessing six separate declarations with varying formatting and

descriptions. Under the circumstances of this case, however, where Plaintiffs timely (if

improperly) filed a combined request for fees and costs, this Court will exercise its discretion to

consider the merits of Plaintiffs' request for costs.

       Defendants raise two substantive objections to Plaintiffs' costs. First, they ask that this

Court strike $10,000 in payments to D'Mark Mick, D. Resp., ECF 376 at 9, given that

Defendants paid Mr. Mick a witness fee and reimbursed his mileage, Letter, ECF 378-6. While

the contracts do allow Plaintiffs to recover their travel expenses, this Court does not find $10,000

to be a reasonable sum for Mr. Mick's travel expenses. The bulk of these costs instead appear to

be compensating Mr. Mick for his time preparing for his deposition and appearance at trial,

which is not a court cost, witness fee, or travel expense under the contract. The Court will strike

$10,000 from the costs award.

       Second, Defendants object to the expert fees of Jennifer Prager, Plaintiffs' accounting

expert. D. Resp., ECF 376 at 9–10. Defendants argue that this fee reflects not only an expert's

work, but "substantive, corrective accounting work" for Great West that Defendants had already

been billed once to perform, including reconstructing master loan ledgers for each cattle program

and identifying applicable account balances. *Id.* Defendants also contend that her fees are

unreasonably high because Great West initially sought an award of default interest but then

shifted its position in the course of trial to disclaim default interest. *Id.* at 10. The Court does not find that any reduction is warranted based on Ms. Prager's decision to prepare a complete accounting of the Great West loan, instead of relying on the records as kept by Plaintiffs. Defendants do not identify any additional fees associated with the shift in position on default interest, so this Court will not reduce fees on that basis either.

As described above, the expert fees must be reduced by 25% to reflect Plaintiffs' lack of success on the Eastgate claims. The law firm costs must be reduced by a total of 40% to reflect both the Eastgate claim and the inefficiencies created by repeated changes of counsel. This Court will award $196,105.56 in expert fees and $48,153.71 in other costs.

## CONCLUSION

This Court GRANTS IN PART Plaintiffs' Motion for Attorney's Fees, ECF 329, and awards $681,840.46 in attorney's fees and $244,259.27 in costs. This Court GRANTS IN PART Defendants' Motion for Attorney's Fees, ECF 339, and Bill of Costs, ECF 338, and awards $70,118.50 in fees and $383.85 in costs.

**IT IS SO ORDERED.**

DATED this 28th day of August, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge